## CORY *v.* SILCOX.

The plaintiff, in a suit for the backing of water by a dam upon his machinery, &c., was allowed to read extracts from "Evans' Millwright Guide," in his closing argument to the jury, although the defendant objected. The Court instructed the jury that extracts read from a scientific work were not even *prima facie* of authority, but like the argument of counsel, or other thing adduced to illustrate, they might be satisfactory to the jury or they might not. *Held*, that there was no error.

In a cause where several issues of fact were raised by the pleadings, the Court, in its charge to the jury, stated that there were but two questions, specifying them, for their consideration, the other facts not being controverted. The evidence not having been set out in the record, *held*, that the presumption was that the parties had narrowed the issue to the questions stated by the Court.

Where an individual constructs a dam so as to flow back water upon the land of another, it is a presumption of law that the act is a damage, and no special damage need be proved.

This presumption applies, in this state, as well to mill-dams as others.

An obstruction caused by the back flowage from a dam, need not be continuous to authorize an action.

Nov. Term,
1854.

Cory
v.
Silcox.

Case by *A.* against *B.* for erecting a dam on *Blue* river below the plaintiff's mills, whereby the water was backed on his machinery. Plea, the general issue. On the trial (in *March*, 1850,) *C.*, who, prior to the commencement of the suit, had no interest in the mills, but had since acquired an interest in the profits by way of compensation for carrying on the business, was offered as a witness. *Held*, that he was incompetent.

*Friday,*
*December* 15.

APPEAL from the *Shelby* Circuit Court.

Hovey, J.—Case by *Silcox* against *Cory*. Plea, the general issue. Trial by jury, and verdict and judgment for the plaintiff. The declaration alleges, that *Cory* erected a mill-dam on *Blue* river, below *Silcox's* mills, whereby the water was backed on *Silcox's* machinery, &c. A similar action between the same parties, from the *Johnson* Circuit Court, was decided at the present term. 5 Ind. R. 370.

The record contains several bills of exceptions, and four points are made in argument by the counsel for the appellants.

1. *Silcox's* counsel, in the closing argument to the jury, read from "Evans' Millwright Guide." This was objected to on the part of *Cory*, 1st, because there was no evidence showing that it was a work of good repute; 2dly, because it was proved that the work was not in good standing and repute; 3dly, that even if the evidence showed it to be a work of good repute, it could not be read in evidence.

There is nothing in these objections, especially as the Court charged the jury, that "the extracts read from a scientific work, are not of authority conclusively or *prima facie*. Like argument of counsel, or any other thing adduced to illustrate, they may be satisfactory to the jury or they may not." Reason is neither more nor less than reason, because it happens to be read from a book; and we think we would be adopting a very difficult rule to enforce, if we should attempt to compel counsel to use their own arguments for every position they might assume.

2. The Court, in delivering the charge to the jury, gave the following instructions:

"There are but two questions to which your inquiry will be directed, the other facts not being controverted. The first of these questions is, whether between the first day of

*January*, 1849, and the first day of *September*, 1849, the dam of the defendant occasioned the water of *Blue* river to so rise as to retard the operation of the plaintiff's mill in any degree for said time, or any part thereof, even for a day or hour. If so, the plaintiff is entitled to a verdict for damages to the amount of the injury suffered on that account. The second question is, whether the said dam of defendant, between said dates, caused the water of said river to so rise as to overflow the plaintiff's land any perceptible distance, so as to increase the depth of said river, where the plaintiff owned the bed thereof, for all or any day of said time. If so, the plaintiff is entitled to a verdict for the damages done; and if the damage is so small that it can not be estimated, the plaintiff is entitled to technical or nominal damages."

Counsel for the appellant insist that these instructions are erroneous, first, because the pleadings present more than two questions for the consideration of the jury. As all of the evidence is not in the record, we can not decide what facts were controverted on the trial, but must presume, as the record does not show the contrary, that the parties narrowed the issues by agreement to the two questions propounded to the jury by the Court.

It is objected, also, that the Court erred in charging the jury that they might assess nominal damages; and it is contended that there must be actual and perceptible damages to sustain actions of this character. Without particularly reviewing the various cases cited which bear upon this question, we will simply refer to several elementary works of standing, where the cases may be found, being satisfied that their conclusions are sustained by the authorities.

Chancellor *Kent*, in the 3d vol. of his Commentaries, p. 439, says: "No proprietor has a right to use the water of a running stream to the prejudice of other proprietors above or below him, unless he has a prior right to divert it or a title to some exclusive enjoyment. Without the consent of the adjoining proprietors, he can not divert or diminish the quantity of water which would otherwise descend to the proprietors below; nor throw the water

back upon the proprietor above, without a grant, or an uninterrupted enjoyment of twenty years, which is evidence of it."

In *Angell* on Water Courses, section 430, it is said: "Where an individual constructs a dam so as to flow back water upon the land of another, it is a presumption of law that the act is a damage, and no special damage need be proved to sustain the suit." And in section 428 he says: "Assuming that no actual damage is shown to arise from the diversion of a water-course, or of throwing water back upon the land above, an action may be maintained, on the ground that an undisturbed enjoyment or continuation of such acts, without the express consent of the owner of the land, would ripen into evidence of a right to do them." See, also, *Sedgwick* on Damages, pages 50, 136, 137. It is contended that these principles are not applicable to dams erected for milling purposes in this state, as mills have been especially favored by our legislation. It is true that one of the principal objects which our legislators have had in view in enacting our acts of *ad quod damnum* was to foster and build up manufacturing establishments; but there can be no doubt that they also intended to establish an easy and cheap mode of quieting and settling the conflicting and ever-varying questions which arise out of riparian interests. Had *Cory* resorted to those acts for the purpose of establishing his dam, much expense and litigation would, no doubt, have been avoided. As it is, he must abide by the principles of the common law.

Again, it is said these instructions are erroneous because the Court instructed the jury that the plaintiff should recover, if the evidence showed that his machinery was retarded a day or an hour; and the position is assumed, that such obstructions must be proven to be continuous to enable him to recover. In cases like this, no such rule prevails. One hour's obstruction would furnish as complete a cause of action as any other longer period of time. There may be cases when dams have been legally established, where temporary obstructions, caused by floods or

accidents, would furnish no cause of complaint, but we will not presume that such facts were proven, where the record is silent.

3. After *Silcox's* and two of *Cory's* witnesses had been examined, the Court, on motion of *Silcox's* attorney, ordered *Cory's* witnesses to be separated. This was a matter within the discretion of the Court, and the record does not show that that discretion was abused.

4. *Aaron Brandenburgh* was called as a witness on behalf of *Silcox,* and sworn in chief. Before his examination, the Court permitted *Cory's* counsel to examine him touching his interest in *Silcox's* mills. He answered, that previous to the commencement of this suit, he had no interest whatever in said mills, but that since the middle of *September,* 1849, he had been carrying on the business of said mills under a contract for part of the profits, which was to continue until *May,* 1851.

*Cory* objected to his being examined in chief, and the objection was overruled.

In the former cause we decided that *Brandenburgh* was incompetent, first, because, as shown by the facts in that case, he would be entitled to a part of the damages under his contract with *Silcox;* and, secondly, because the record of the judgment obtained would be admissible in a subsequent suit by *Silcox* and himself against *Cory.* The same interest in the record is presented in this cause. In the case of *Blakemore and Booker* v. *The Glamorganshire Canal Company,* 2 Cromp., Mees. & Roscoe R. 133, an action was brought for diverting water. On the trial, the record of a former suit between *Blakemore* and the company was offered in evidence, and it was objected that as *Booker* was not a party to that record, and as he had been examined as a witness on the former trial, the record was not admissible; but the Court, after reviewing the authorities, were unanimously of opinion that the record was properly admitted, on the ground that it was within the rule of verdicts being admissible between parties and privies. See 1 Greenleaf's Ev., sec. 536. As the record could be used by *Brandenburgh* and *Silcox* against *Cory* for obstructions

which might occur during *Brandenburgh's* term in the mills, he was incompetent, and should have been excluded, under the law as it existed at the time of the trial (1). See *Cory* v. *Silcox*, 5 Ind. R. 370.

*Per Curiam.*— The judgment is reversed with costs. Cause remanded, &c.

*J. Morrison, S. Major, W. J. Peaslee* and *T. A. Hendricks*, for the appellant.

*H. O'Neal, T. D. Walpole* and *M. M. Ray*, for the appellee.

(1) The trial was in *March*, 1850. The R. S. 1852 provide that—"No person offered as a witness shall be excluded from giving evidence either in person or by deposition, in any judicial proceeding, by reason of incapacity from crime or interest. But this section shall not render competent a party to an action, or the person for whose use it is brought, or the husband or wife of any such party." 2 R. S. 1852, p. 80, s. 238.