Johnson, Administrator, v. Culver, Administratrix.

116 278
117 387
119 277
120 373
121 566
116 278
124 588
125 79
127 25
116 278
130 86
116 278
131 146
131 299
133 161
116 278
142 446
116 278
146 588
147 174
116 278
149 190
150 162
116 278
154 347
116 278
159 235
116 278
163 65
116 278
165 625
116 278
f166 31

No. 13,289.

JOHNSON, ADMINISTRATOR, v. CULVER, ADMINISTRATRIX.

SPECIAL VERDICT.—*Judgment on.*—*Practice.*—A party who deems himself entitled to judgment on a special verdict should move for judgment, and, if unsuccessful, preserve the question by an exception.

SAME.—*Separate Causes of Action.*—*Motion for Judgment on Each.*—Where the causes of action are clearly distinct, it is proper to move for judgment on each cause.

SAME.—*Discretion of Trial Court.*—It is discretionary with the trial court, after instructions have been asked and argued, to grant or refuse a request for a special verdict.

SAME.—*Instructions to Jury.*—*Practice.*—Where a special verdict is directed, instructions to the jury, except as to rules of evidence and the frame of the verdict, are dispensed with, and available error can not be predicated upon instructions relating to the general rules of law.

FRAUD.—*Contract.*—*Rescission.*—*Damages.*—*Election as to Remedy.*—A person who is induced by the fraud of another to enter into a contract with the latter, may rescind the contract *in toto*, or he may affirm the contract and sue for the damages caused by the fraud.

SAME.—*Consideration.*—*Tender.*—*Insanity.*—In ordinary cases, not complicated by the element of insanity, the plaintiff who elects to rescind must tender back the consideration received; but if he elects to sue for damages no tender is required.

SAME.—*Sale.*—*Measure of Damages.*—In an action by an administrator to recover the value of personal property obtained by the defendant under a fraudulent contract with the plaintiff's insane intestate, the measure of recovery is the loss actually sustained, *i. e.*, the value of the property less any consideration paid and retained.

SAME.—*Promissory Note.*—*Payment.*—In estimating the amount of recovery it is proper, in the absence of a showing that it has not been paid, to allow the defendant credit for a promissory note executed by him and delivered to the payee in part payment for property purchased.

SAME.—*Waiver of Right to Sue for Damages.*—To constitute a waiver of a right to sue for damages resulting from a contract procured by fraud, the party who sustains loss must act with a full knowledge of his rights and the material facts in the case, and clearly manifest his intention to abide by the contract and abandon any remedy he may have.

EVIDENCE.—*Insanity.*—*Non-Expert Witness.*—It is not necessary that the acquaintance of non-expert witnesses with a person whose mental condition is in question should be extensive or intimate; it is enough if the acquaintance is such as to enable the witness to form some opinion.

Johnson, Administrator, *v.* Culver, Administratrix.

SAME.—*Conduct and Declarations of Alleged Insane Person.*—It is proper for a witness to describe the conduct and to repeat the declarations of a person whose mental capacity is the subject of investigation.

SAME.—*Value of Land.—Contract of Exchange.—Fraud.*—The value of land given in exchange for other property may be shown in a case where the contract of exchange was procured by fraud.

SAME.—*Refreshing Memory.—Written Memorandum.*—A witness may refresh his memory by reference to a written memorandum made by himself, where many items of personal property are involved.

SAME.—*Items of Account.—Entries Against Interest.*—Entries against the interest of the person by whom made are admissible for the purpose of showing items of account.

ARGUMENT OF COUNSEL.—*Reading Law to Jury.—New Trial.*—Counsel may, in civil cases, state to the jury their own views of the law, and speak in a general way of what courts and text-writers have said; but they may not read from law-books, or from written statements taken from law-books, and placed before the jury as coming from that source, and if permitted to do so, over objection, it is cause for a new trial.

From the Tippecanoe Circuit Court.

*R. P. Davidson, J. C. Davidson, S. P. Baird* and *J. B. Sherwood,* for appellant.

*J. R. Coffroth, T. A. Stuart* and *A. L. Kumler,* for appellee.

ELLIOTT, J.—The first paragraph of the appellant's claim or complaint alleges that the appellant's intestate, Sarah Rohler, owned a large amount of personal property; that she was of unsound mind at the time of her death, and that the appellee's intestate, Moses C. Culver, wrongfully appropriated, under a fraudulent contract, that personal property.

The second paragraph of the complaint alleges that Sarah Rohler was, for a long time prior to her death, the owner of one hundred and ten acres of land; that she was of unsound mind; that Moses C. Culver undertook to manage the property, and that he collected and appropriated the rents of the property to his own use.

A special verdict, embodying much evidence, and going unnecessarily into detail, was returned by the jury, but we do not deem it necessary to set forth the verdict at length, for

it would uselessly encumber the record with irrelevant and redundant matter. We believe that the questions presented can be understood and discussed by referring to such parts of the verdict as affect each particular question, and that course we shall pursue.

The questions were presented by motions for judgment on the facts found, and this was the appropriate procedure. A party who deems himself entitled to judgment on a special verdict should move for judgment, and, if unsuccessful, preserve the question by an exception. *Austin* v. *Earhart*, 88 Ind. 182, *vide* opinion, p. 183; *Dixon* v. *Dukes*, 85 Ind. 434.

Where the causes of action are clearly distinct and different, then it is proper to move, as was done here, for judgment on each cause of action, since it is obvious that a party may be entitled to judgment on one and not on the other.

The questions arising on the special verdict are thus appropriately presented, and we will decide them in substantially the order in which counsel have discussed them.

The counsel of the appellant thus state their first position :

" The most important ruling of which we complain is the sustaining of the defendant's motion for judgment in her favor, upon the facts found in the special verdict, upon the issues formed upon so much of the allegations of the first paragraph of the claim as seeks to recover because of the appropriation by defendant's intestate of the promissory notes therein described, and the moneys arising therefrom."

That part of the special verdict which affects this particular phase of the case is, in substance, as follows :

" William Rohler died intestate, and Sarah Rohler was his widow and sole heir. He left a considerable amount of personal property, among it, the promissory notes referred to in the first paragraph of the claim or complaint.

"At the time of the death of William Rohler, Sarah Rohler was a person of unsound mind, continued to be a person of unsound mind, and of weak mind and easily influenced, until

the day of her death, which occurred on the 1st day of January, 1884. .

"At the instance of Moses C. Culver, Sarah Rohler was by this court, on the 26th day of June, 1879, appointed administratrix of the estate of William Rohler, and Culver became her surety on the bond she gave as such administratrix.

" On the 26th day of June, 1879, by a previous arrangement between Culver and one James Davidson Murphy, Sarah Rohler was brought from his, Murphy's, residence in Montgomery county to the Bramble House, a public hotel in the city of Lafayette, in the county of Tippecanoe, where these three persons, together with the wife of Murphy, met, and where letters of administration were issued to Sarah Rohler as aforesaid ; and at the same time and place Sarah Rohler executed a deed of conveyance to the wife of Murphy of all the real estate owned by her, which deed had been prepared by a notary about three days before said last date, at the instance of Culver, and the deed, at the suggestion of Culver, was deposited in the vault of P. P. Culver, a son of M. C. Culver.

" J. D. Murphy was, on the 18th day of June, 1879, appointed, by a written power of attorney, a pretended agent for Sarah Rohler for the transaction of her business, at the instance of M. C. Culver."

All of the notes belonging to the estate of William Rohler were placed in the Indiana National Bank of Lafayette for collection.

In November, 1879, Culver went to the house of J. D. Murphy, where Mrs. Rohler was then living, and made a proposition to purchase from him, as the agent of Mrs. Rohler, all of the promissory notes and the money collected by the bank. At the same time he offered to pay Murphy $100 for his own benefit if the proposition was accepted by Mrs. Rohler. Murphy agreed to submit Culver's proposition to her, but said that he would not advise " either for or against it." He did submit the proposition to her, but he did not

tell her that Culver had agreed to pay him $100 in case the proposition was accepted.

On the 2d day of December, 1879, Murphy, as the agent of Mrs. Rohler, entered into a written contract with Culver, wherein he, as the agent of Mrs. Rohler, agreed that the notes should be transferred to Culver. The consideration for the transfer was the agreement of Culver to pay some claims, attorney's fees and court costs in the matter of the estate of which Mrs. Rohler was the administratrix, $1,000 in money, and in addition to convey to Mrs. Rohler forty acres of land in White county. This contract was subsequently submitted to Mrs. Rohler and approved by her.

On the 2d day of December, 1879, there was in bank to the credit of Sarah Rohler $1,809.06, collected on the notes previously deposited, and there were, also, uncollected notes to the amount of about $1,100.

At the time this contract was made Mrs. Rohler had no knowledge of the amount that had been collected on the notes. The total consideration agreed to be paid by Culver, including the land in White county, was $1,569.54. Murphy was paid the $100 promised him by Culver. The White county land was conveyed to Mrs. Rohler on the 5th day of December, 1879.

The facts found establish fraud on the part of Culver. This is quite clear, and we do not understand appellee's counsel to maintain that there was not fraud sufficient in force to vitiate the contract. To the element of fraud is added that of insanity. We have, therefore, the case of a man securing from an insane woman property of the value of $2,909 for a consideration of $1,569. The money in bank alone exceeded the whole consideration by more than two hundred dollars. The case is one which calls strongly for relief, and relief should be granted unless some imperative rule of law stands between it and the claimant.

The rule which the appellee invokes for protection is, that a contract can not be avoided unless the plaintiff returns, or

offers to return, what he has received. The specific application of this rule which counsel make is, that the appellant must fail to recover the entire value of the notes because the White county land has not been re-conveyed to the appellee.

The general rule in many cases unquestionably is that stated by the appellee's counsel, but we regard it as not applicable to this case. We understand the law to be, that a defrauded plaintiff may either rescind the contract *in toto*, or he may affirm the contract and sue for the damages caused by the defendant's fraud. *Home Ins. Co.* v. *Howard,* 111 Ind. 544.

In ordinary cases, that is, cases not complicated by the element of insanity, the plaintiff who elects to rescind must tender back the consideration received ; but where he elects to sue for damages no tender is required. We do not, however, deem it necessary to inquire or decide what the rule is where a rescission is demanded, and both fraud and insanity are present, for we think this is not a case for rescission, but we think, as we have said, that it is an action for damages. We regard the claim not as a demand for rescission, nor as a demand for the recovery of specific property, but as a demand for the recovery of the value of personal property obtained under a contract with an insane person procured by fraud.

The first inquiry, as the case is presented by the record, is, therefore, what damages shall be awarded in such a case to the representative of the defrauded person ? He seeks compensation, and to compensation he is entitled. Full compensation is his due, but nothing more. He can not make the purchaser pay more than the loss sustained. We can not, therefore, concur with the appellant's counsel that their client was entitled to recover the value of the notes and money, irrespective of the compensation actually paid Mrs. Rohler, but we think that he is entitled to recover the value of the notes less the consideration paid to Mrs. Rohler and retained by her.

As given in the brief of counsel, the value of the notes and money aggregates $2,909.06, and the consideration paid was $1,569.54. The loss actually sustained is the difference between these two sums (assuming that they are correctly stated), which is $1,339.52, and as this sum represents the loss actually sustained, it should be the measure of recovery. As the seller received $1,569.54, all she lost was the value of the notes in excess of that sum, and this furnishes the measure of damages for this item of the appellee's claim. Our conclusion upon the immediate question before us is, that the appellee was entitled to judgment for the sum representing the difference in value between the value of the notes and money obtained under the fraudulent contract and the sum paid to Mrs. Rohler and by her retained.

Before leaving this branch of the case we desire to again direct attention to the character of the claim or action, because we do not intend that the case shall be confused with cases for rescission or for the recovery of specific property. We mean to limit our decision to the case which the record makes, and that is to a claim for damages, pure and simple. To such a case we do limit it. In this connection it is proper to speak of the case of *Campbell* v. *Kuhn*, 45 Mich. 513, relied on by the appellee. That case is not in point. That action was brought to recover the balance of a deposit which an insane person, previous to her insanity, had placed in the hands of the defendant. The latter claimed that he had paid it by a conveyance executed to her after she had become insane, and it was held that the action would not lie without tendering a re-conveyance.

In two essential particulars that case is unlike the present. Here there was an actual fraud practiced upon an insane person, while in that case there was no fraud; and here, too, the action is to recover damages caused by the fraud, and not to recover back money paid for property. The controlling element of difference, in our opinion, is that here the representative of the insane person does not demand back any

property, but demands compensation for loss caused by the fraud of the defendant's intestate. Our view of the right of recovery and of the measure of damages is sustained by the case of *Burnham* v. *Mitchell*, 34 Wis. 117. It is true that the question was not presented in that case precisely as it is here, but the principle there declared is essentially the same as that which we here adopt.

The retention of property by a party who has suffered loss from the fraud of another does not preclude the loser from maintaining an action for damages, nor does even an express waiver of the fraud and explicit ratification of the contract have the effect to deprive the party of his action, unless, indeed, the ratification is of such a character as to imply a release from the consequences of the fraud.

In the case of *St. John* v. *Hendrickson*, 81 Ind. 350, it was said : " It is undoubtedly the law, that there may be a waiver of a right to recover damages for loss resulting from false and fraudulent representations by an express affirmance. It is essential to such a waiver, that the party should possess full knowledge of the fraud practiced upon him ; that he should intend to confirm the contract and abandon all right to recover for the loss resulting from the fraud."

Mr. Bigelow does, indeed, disapprove that case, because, as he impliedly, at least, maintains, even an express abandonment of the claim for damages will not preclude the party from maintaining an action. Law of Fraud, 69, n.

We think that the learned author does not fully appreciate the fact which clearly appears in the case criticised, that the plaintiff, although he once accepted back from the defendants the money which he alleged was fraudulently obtained from him, subsequently, and with full knowledge of all the facts, returned the money and affirmed the original contract. But if Mr. Bigelow is right, our error was in not carrying the rule far enough, and, of course, we ought now to decide, if that learned author is right, that in no event can there be an affirmance of the contract and an abandonment of the right

of action, and this would operate more strongly against the appellee than the rule we did and do approve. The rule we asserted is substantially that given by Judge Cooley, who says : "The fraud may also be waived by an express affirmance of the contract. Where an affirmance is relied upon it should appear that the party having a right to complain of the fraud had freely, and with a full knowledge of his rights, in some form, clearly manifested his intention to abide by the contract, and waive any remedy he might have had for the deception." Cooley Torts, 505. Very many cases are cited by Judge Cooley in support of the text, and they do, as we believe, fully sustain it.

The case of *Parker* v. *Marquis,* 64 Mo. 38, decides that "Where a party has been defrauded by another in making an executory contract, a subsequent performance of it on his part, even with the knowledge acquired subsequently to the making, and previous to the performance, will not bar him of any remedy for the recovery of damages."

This is the rule, as we understand the authorities to declare it, but we do not understand that it extends to a case where the right of action has been released or freely and fully abandoned. *Whitney* v. *Allaire,* 4 Denio, 554 ; *Payne* v. *Whale,* 7 East, 274 ; *Nauman* v. *Oberle,* 90 Mo. 666 ; *Grabenheimer* v. *Blum,* 63 Texas, 369.

We say here, as we said in *St. John* v. *Hendrickson, supra,* that "We fully recognize and approve the rule that a party may retain what he received, stand to his bargain, and recover for the loss caused him by the fraud. We do not mean to run counter to this rule. We neither hold nor mean to hold, that affirmance by retention of the thing bargained for cuts off an action for damages. We do hold that, where a party with full knowledge of all the material facts does an act which indicates his intention to stand to the contract and waive all right of action for the fraud, he can not maintain an action for the original wrong practiced upon him." *Mc-*

*Queen* v. *State Bank*, 2 Ind. 413; *Campbell* v. *Fleming*, 1 Ad. & E. 40.

The case before us falls far within the rule, for here there was neither knowledge of the facts, nor abandonment of the right to compensation for the loss occasioned by the fraud. Excluding entirely the element of mental unsoundness, the appellant is entitled to compensation for the loss caused his intestate by Culver's fraud.

It appears from the special verdict that Culver obtained personal property, grain, domestic animals and the like, from the appellant's intestate through the medium of her agent, Murphy, and that, although he paid part of the value of those articles, he did not pay their full value. The special verdict contains these facts relevant to the question we are now discussing:

"That in the purchases of the corn, wheat and oats, being the crops raised on the lands of said Sarah Rohler, and in the purchase of the other personal property, other than the promissory notes, which said purchases are above set out, and which were made by Culver of J. D. Murphy, as the pretended agent of Sarah Rohler, Culver acted in collusion with J. D. Murphy, with the fraudulent intent to cheat and defraud Sarah Rohler.

"That all of the purchases made by Culver of Sarah Rohler in person were, and are, fraudulent.

"That from the time of her marriage to William Rohler, in 1855, until January, 1879, Sarah Rohler resided in the immediate neighborhood of Culver, and was by him well known, and that during that time she was of weak mind, which was well known to Culver."

It is shown by what has been already said that Culver became liable for the reasonable value of the property obtained by fraud from Mrs. Rohler, and that the appellant was entitled to recover, as damages, the difference between that value and the consideration paid her by Culver. As we understand counsel, and gather from the record, an allowance

was made for this amount in the judgment of the court, but that the amount due the appellant on account of the appropriation of the money and promissory notes of which we have spoken, was not included in the judgment, as it should have been.

We agree with the appellee's counsel that the appellant would not be entitled to recover for any of the personal property if it had been appropriated by his intestate without any contract between him and Mrs. Rohler before it came into her custody and control. But she did have the control. and custody of the property, and Culver did obtain it under a contract with her, and the estate of her husband was fully settled before her death. The sole ownership of the property and the right of action were, therefore, vested in her, and her representative succeeded to that right of action. The case before us is not at all like that of *Douglass* v. *McCarer*, 80 Ind. 91, but is, in all of its principal features, a case of an entirely different class.

The appellant insists that the trial court erroneously allowed the appellee a credit of $300 by treating a promissory note executed to her by Culver in part payment for some of the personal property obtained from her as a payment for the property. The finding on this point is this: " That Culver paid therefor $140.75 cash and gave his note for $300, and in no other way was the property paid for, and there is no evidence that any part of the note for $300 was ever paid."

We can not hold that the trial court erred in allowing the credit. As the note went into the possession of Mrs. Rohler and has been retained by her and her representatives for a very long time, the presumption is that it was paid or was accepted as payment. No account whatever is given of the disposition made of the note, and we do not think that upon the facts found it can be declared, as a conclusion of law, that it has not been paid. The note is traced to the possession of the payee, and not having been produced or accounted for, it can not be adjudged that it has not been paid.

Johnson, Administrator, *v.* Culver, Administratrix.

Many of the cross-errors assigned by the appellee are disposed of in discussing the questions presented by the appellant's assignment of errors, and we do not deem it necessary to further discuss those questions. Others it becomes necessary for us to examine, and to that work we now proceed.

The record in the action brought to contest the will of Mrs. Rohler was properly admitted in evidence for the purpose to which its effect was limited by the instructions of the court. It was competent to show by the record that the will was judicially adjudged invalid, and to this the effect of the evidence was restricted by the court.

There was no error in permitting the opinions of non-expert witnesses to go to the jury, for the witnesses disclosed to the jury the facts on which the opinions were based. It is not necessary that the acquaintance of witnesses with the person whose mental condition is in question should be extensive or intimate; it is enough if the acquaintance is such as to enable the witnesses to form some opinion. The value of the opinion will, of course, depend upon the facts on which it rests. *Colee* v. *State*, 75 Ind. 511; *Sage* v. *State*, 91 Ind. 141; *Goodwin* v. *State*, 96 Ind. 550; *City of Terre Haute* v. *Hudnut*, 112 Ind. 542, op. p. 550.

It is entirely proper for a witness to describe the conduct and to repeat the declarations of the person whose mental capacity is the subject of investigation. The declarations are not themselves evidence against the adverse party, except in so far as they constitute a part of the facts upon which the opinion of the witness is founded. Beyond that they have no effect.

The evidence concerning the White county land was competent. It is proper to prove the value of land given in exchange for other property in a case like this, where the contract of exchange was procured by fraud. What has been said in discussing the measure of recovery establishes

the competency of the evidence respecting the land in White county.

A witness may refresh his memory by reference to a written memorandum made by himself in a case where many items of personal property are involved. He can not, to be sure, testify entirely from the writing, for he must have a knowledge and recollection independent of the memorandum, but for the purpose of assisting his memory and giving accuracy to his statements he may refer to what he has written.

Entries against the interest of the person by whom made —" self-disserving entries," as Dr. Wharton calls them— especially when made in the usual course of business, and in the books usually kept in that business, are admissible for the purpose of showing the items of account. It is obvious that if entries were not admissible long and complicated accounts could never be exhibited to a jury, for human memory is not capable of retaining details of that character. The trial court did right in admitting the books of the bank in connection with Mr. Brockenbrough's testimony.

It was not an abuse of discretion on the part of the trial court to direct a special verdict after instructions had been asked and argued. It was discretionary with the court at that stage of the proceedings to refuse or to grant the request for a special verdict.

The record thus describes the conduct of one of the appellant's counsel in argument, of which conduct complaint is here made, and upon which is founded one of the causes assigned by the appellee for a new trial:

" In the final argument by the plaintiff's counsel, he took from his pocket a written memorandum containing extracts from text-writers and from adjudicated cases, which extracts are hereinafter set out, and read to the jury therefrom, in consecutive order, a part of each of said extracts, and at the same time (with said memorandum in his hand, and as if reading therefrom) stated to the jury the substance of the balance of each of said extracts not so literally read to them,

giving the author and the section or page of each of said extracts. Which said extracts so partly read and partly stated in substance to the jury, read in these words, to wit:

" ' Taylor on Evidence says: Perhaps the testimony which least deserves credit with a jury is that of skilled witnesses. These gentlemen are usually required to speak not to facts, but to opinions; and where this is the case it is often quite surprising to see with what facility and to what extent their views can be made to correspond with the wishes or the interests of the parties who call them. (Section 58.) '

" 'And they come with biased minds to support the cause on which they are embarked. Little weight will, in general, be attached to the evidence they give unless based on obviously sensible reasonings. (Section 1877.) '

" ' Best on Evidence says : Testimony is daily received in our courts as scientific evidence to which it is almost profanation to apply the term, as being revolting to common sense, and inconsistent with the commonest honesty on the part of those by whom it is given. (Section 514.) '

" ' The Supreme Court of the United States, in the case of *Winans* v. *New York and Erie R. R. Co.*, 21 Howard, 88, says : Experience has shown that expert testimony can be obtained to any amount, and that many days and weeks are wasted wearying court and juries without elucidating questions involved.'

" 'And the Supreme Court of Michigan, in 29 Michigan, 1, Judge CAMPBELL says that expert testimony has not been such as to impress them with the conviction that the scope of such proofs should be extended.'

"And thereupon the defendant objected to this action of counsel in reading from said memorandum and in stating what law-writers and authors had said and decided upon this question, and asked the court to instruct the jury that this action of counsel was improper, and should not be considered by them, and that the jury should not be affected by what had been read from said memorandum. But the court

declined to make any order, and counsel on his own motion ceased to read from the manuscript, but made a general statement to the jury over the defendant's objection that what he had read was the general opinion of courts and law-writers on the subject of experts and expert testimony, and to the action of the court in refusing to stop counsel from reading from said memorandum and in refusing to instruct the jury as requested, and to the action of counsel, defendant then and there excepted."

The matter thus brought before the jury bore, it is important to keep in mind, directly and strongly upon the credibility and value of the testimony of the witnesses. It did not relate to general principles of law, but to the testimony of the witnesses who came before the jury. Counsel assumed to give the jury the rules for weighing testimony, and this was a subject upon which it was proper, notwithstanding the fact that a special verdict was directed, for the court to give the jury instructions. The matter was, therefore, material and tended strongly to influence the jury as to their conclusions upon the evidence.

The rule which is established upon principle and authority is, that counsel should not, in civil actions, be permitted to read the law from books to the jury. The law should come from the court in all civil cases. If any other rule is adopted, then confusion must almost certainly result, for the opinions of text-writers conflict and the decisions of the courts clash. The just and effective administration of justice requires that the jury should take the law from the court and not from books or decisions selected by counsel. The cases are generally in harmony upon this point, although there is some conflict among them. *Porter* v. *Choen,* 60 Ind. 338; *City of Evansville* v. *Wilter,* 86 Ind. 414, see p. 418; *Cory* v. *Silcox,* 6 Ind. 39; *People* v. *Anderson,* 44 Cal. 65; *Baker* v. *City of Madison,* 62 Wis. 137; *Sullivan* v. *Royer,* 72 Cal. 248; *Ordway* v. *Haynes,* 50 N. H. 159; *City of*

*Chicago* v. *McGiven*, 78 Ill. 347; *Gilberson* v. *Miller, etc., Co.*, 5 Pac. Rep. 699.

It is the province of the court to declare the law to the jury, and it is the duty of the jurors to take the law from the court.

It is true that in this instance counsel did not directly read from books actually before him, but he read from written statements taken from the books, and these statements were placed before the jury as coming from that source. This was to all intents and purposes the same thing as reading directly from the books. The jury were informed that the extracts were taken from books which contained the law and the extracts were read as expressing the law. What counsel can not directly do they can not do by indirection. The rule against reading the law from books can not be evaded by copying from the books and reading as the statements of the law the extracts copied. Appellant's counsel violated a salutary rule of law and invaded the rights of the appellee, giving her just cause of complaint. By veiling his purpose he did not conceal it, and the result is that the cause for a new trial based on the misconduct in argument is well assigned. The trial court erred in not checking counsel and in not explicitly instructing the jury to disregard what was read to them. *Nelson* v. *Welch*, 115 Ind. 270.

We do not, we add, to prevent possible misconception, intend to be understood as deciding that counsel may not state their own views of the law, or that they may not, in a general way, speak of what courts or text-writers have said, but we do intend to decide that it is not proper for them to read to the jury extracts from books as the law of the case. There is, every one must see, a wide difference between reading from books and making general statements of the law. An extract taken from a book very often has a weight and influence with men that it is not at all entitled to receive, for it is commonly supposed that what is found in a law book is a correct

and indisputable statement of the law, whereas in many instances it is far from being correct or accurate.

The court was not bound to give any instructions as to the general rules of law governing the case, for, where a special verdict is directed, the law must be applied by the court when the verdict presents the facts to it. *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18 ; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582.

We need not, therefore, inquire or decide whether the instructions upon the general rules of law were, or were not, correct, for the special verdict places the facts upon the record, and upon them the judgment must be pronounced so that the instructions of the character specified are not of controlling importance. A special verdict dispenses with instructions except as to rules of evidence and the frame of the verdict.

We have not discussed all, by any means, of the questions presented by the one hundred and five causes assigned for a new trial in appellee's motion, but we have decided all that we think likely to arise on another trial, and this we conceive is all that we are required to do. We share in the regret of appellant's counsel that the cause must go back for a new trial, but the error in permitting the law to be read in argument to the jury is a material one, is strongly pressed, and necessarily leads to a judgment directing a new trial.

Judgment reversed, at the costs of the appellant, with instructions to sustain the appellee's motion for a new trial.

Filed Dec. 13, 1888.