## SUPREME COUNCIL OF KNIGHTS AND LADIES OF COLUMBIA *v.* APMAN ET AL.

[No. 5,921. Filed March 22, 1907.]

1. PLEADING. — *Complaint.* — *Insurance.*—*Contracts.*—*Discharge.* —A complaint which counts upon an insurance policy and which shows a discharge thereof by the plaintiff, is bad. p. 674.

2. CONTRACTS.—*Compromise.*—*Rescission.*—An action cannot be maintained upon the original contract which has been compro-

ꞏmised by the payment and acceptance of an amount in satisfaction, so long as the compromise is not rescinded.   p. 674.

3.   PLEADING. — *Complaint. — Cancelation.—Fraud.—Contracts.— Consideration.—Return.*—A complaint for the cancelation of a compromise agreement, because of defendant's fraud in its procurement, must allege a return or tender of the consideration received.   p. 674.

4.   INSURANCE.—*Compromise.—Fraud.—Election to Sue in Contract or Tort.*—A plaintiff who is induced by fraud to execute a release of an insurance policy of which he is beneficiary, may tender back the consideration and sue on the contract, or affirm the release and sue in tort.   p. 675.

5.   PLEADING. — *Facts. — Fraud.* — A complaint for fraud must state the facts constituting the fraud.   p. 675.

6.   DAMAGES. — *Measure. — Insurance. — Release. — Fraud.*—The measure of damages, in an action to set aside a release of an insurance policy because of defendant's fraud, and to recover on the policy, is the difference between the amount received and the amount stated in the policy.   p. 678.

7.   SAME. — *Measure. — Insurance. — Release.—Fraud.—Ratification.*—In an action for damages for the fraudulent procurement of plaintiff's release of an insurance policy, the measure of damages is the difference between the actual value of the policy under the circumstances, and the amount received.   p. 678.

8.   PLEADING. — *Complaint.—Insurance.—Release.—Fraud.—How Alleged.*—In an action to recover damages for defendant insurance association's fraudulent procurement of plaintiff's release of an insurance policy, it is not sufficient to show that the fraud was that of an officer of such association, but it must be alleged as having been committed by the defendant.   p. 679.

9.   FRAUD. — *Insurance. — Release.—Evidence.*—Where the beneficiary of an insurance certificate assigned it as collateral security for a loan, and afterwards, through the fraud of such creditor, executed an absolute release thereof, the insurance association not being a party thereto, he cannot recover against such association on account of such fraud.   p. 679.

From Clay Circuit Court; *Presley O. Colliver,* Judge.

Action by Charles Apman against the Supreme Council of Knights and Ladies of Columbia and another.   From a judgment for plaintiff, said council appeals.   *Reversed.*

*Rawley & Hutchison,* for appellant.

*Albert Payne* and *A. W. Knight,* for appellee Apman.

ROBY, P. J.—Action by appellee Apman. Trial by jury. Verdict for $645. Appellants motion for a new trial overruled. Judgment on verdict.

The parties do not agree upon the construction of the complaint. Appellant asserts that it is founded upon a benefit certificate issued by it to Sarah Apman in the sum of $1,000, and payable upon her death to appellee Apman, who was her husband. Such certificate is designated in the pleading as a policy, and it is averred that a copy thereof is not filed with and not made a part of the single paragraph of complaint, for the reason that the original is in the possession of the appellant. Full performance of the conditions of said certificate, the death of said member, and the furnishing of proofs thereof, are all averred, and in the absence of the additional averments hereafter referred to the action would very clearly be, as contended by appellant, an action upon the contract contained in the certificate. Appellee Apman, however, asserts that it sounds in tort, and seeks the recovery of damages on account of fraud. Following that part of the pleading which has already been summarized, it is averred, in effect, that at the time of his wife's death said appellee was in straitened financial circumstances, and did not have either money or credit to meet his wife's funeral expenses, and solicited John Brooks to guarantee the payment of such funeral expenses, and offered to secure him by an assignment of "the insurance policy sued upon herein;" that Brooks agreed to and did stand good for said funeral expenses, which amounted to $355, whereupon said appellee assigned said certificate to him as security for said sum; that shortly thereafter Kennedy, appellant's supreme counselor, was sent by it to said appellee and Brooks for the ostensible purpose of effecting a settlement of appellant's liability under said certificate; that when said officer learned of said assignment he notified Brooks that it would not be recognized by appellant, and further represented that if said appellee and Brooks

would join in an assignment to appellant it would hold said certificate as collateral security and would advance the funeral expenses, pending final settlement, and that none of said appellee's rights would be affected by said assignment; that Kennedy, in pursuance of a fraudulent scheme to get possession of said certificate and defeat the payment thereof, except as to the amount of said funeral expenses, represented that legal entanglements were likely to arise which might defeat the payment of any part of said certificate unless he and said Brooks joined in said proposed assignment, and that if it was made, appellee's rights should be in all things protected. He also avers that at the time of said conference he was sick and in a state of intoxication, and unfit by reason thereof to transact ordinary business affairs or fully to appreciate his rights under said certificate; that, relying upon and having confidence in said representations of Kennedy and Brooks, he delivered said certificate to Kennedy, and joined in signing a certain instrument, which Kennedy represented to be a mere assignment of said certificate as aforesaid, with the understanding that the policy would be paid in due course of time; that said appellee and Brooks relied implicitly upon the representations thus made by Kennedy, and were induced by him to believe and act as aforesaid. He avers also that on account of defective eyesight he was unable to read said instrument, and that neither Kennedy nor any one else read it to him or explained its real contents; that having confidence in Kennedy he relied wholly upon his representations, and believed the instrument to be merely an assignment for the purpose above stated; that he so continued to believe until the appellant notified him that said instrument was a full and complete release and settlement of his claims under said certificate in consideration of said $355. He now avers that he was induced to sign said instrument upon the false and fraudulent representations of Kennedy; that it was a mere assignment of the policy to hold as collateral

security as aforesaid. He admits the payment of said $355 to the undertaker, and that such sum should be deducted from the face valuation of said policy, and he avers that "said sum is the only sum which has been paid by said defendant society in liquidation of said policy and contract of insurance," and that he is entitled to recover the difference between the funeral expenses and the amount of said certificate with interest thereon; that said amount is due and unpaid; that appellant refuses to pay and that Brooks is made a party "to answer to any interest he may claim in the policy." Judgment against appellant for $1,000 is demanded. A demurrer for want of facts was addressed to this pleading. It was overruled, and said ruling is assigned as error.

If the complaint is to be construed as one upon the benefit certificate, and for the enforcement of the contract contained therein, then the demurrer should have been

1. sustained, the averments showing that a written discharge of liability had been executed in consideration of $355 paid by appellant and received by appellee.

"In such a case as this a recovery cannot be had upon a contract which has been released and surrendered up, in pursuance of a subsequent contract, upon which an

2. amount has been paid as a compromise of a disputed liability upon the original obligation, so long as the subsequent contract remains unrescinded and in force." *Home Ins. Co. v. Howard* (1887), 111 Ind. 544, 546.

If the averments relative to the execution of said release are to be taken as showing that it was obtained by fraud, and to procure its cancelation because of such fraud,

3. then they are insufficient, in that no return or tender of the $355, which was admittedly received, is shown by the pleading. *Home Ins. Co. v. Howard, supra; Citizens St. R. Co. v. Horton* (1897), 18 Ind. App. 335; *Johnson v. Culver* (1888), 116 Ind. 278.

Appellee Apman's position is that the action is not *ex contractu,* but sounds in tort. · It is the undoubted law that a party fraudulently induced to execute such a release may affirm the release and sue for damages caused by such fraud. *Wabash Valley, etc., Union* v. *James* (1893), 8 Ind. App. 449; *Johnson* v. *Culver, supra; St. John* v. *Hendrickson* (1882), 81 Ind. 350; *Nysewander* v. *Lowman* (1890), 124 Ind. 584.

It is essential in pleading fraud to state facts. Appellee's attorneys say: "It would subserve no good purpose to set forth in detail the averments of the complaint covering such elements as are necessary to be charged to make out the cause of action for damages on account of fraud. A perusal of the complaint by this court will disclose that Kennedy made certain material representations to Apman to induce him to execute the instrument, which subsequently turned out to be a complete release; that said representations were false, and were made for the fraudulent purpose of influencing Apman to make the assignment of the policy of insurance to the appellant lodge; that Apman reposed confidence in Kennedy, and innocently fell into the trap fixed up for him; that Apman was so drunk at the time as to be incapable of transacting business in an intelligible manner, and was also in straitened financial circumstances; that Apman, in executing the alleged release, bound himself to accept the sum of $355 in full settlement of a valid, binding, enforceable and *bona fide* claim of $1,000, to which he was legally entitled under the terms of the policy, and which settlement, upon its face, was utterly inadequate and utterly unconscionable; that he, Apman, was injured thereby. * * * We leave the determination of the matter to this court, in the secure belief that the court will conclude, without hesitation, that sufficient facts are pleaded to make out, not only a case of fraud, but a very black and infamous case of fraud at that."

An answer in four paragraphs was filed. The first paragraph was the general denial. The second was that appellee Apman was not the real party in interest, for the reason that the certificate sued upon had been for a valuable consideration assigned to John Brooks before suit was brought. In the third paragraph the assignment was stated, and it is averred, that appellant denied liability upon said certificate because of certain facts, which are set out, and that a full settlement was had between all concerned, appellant paying $355 in discharge of all its liability, and appellee Apman voluntarily and freely executing a written release thereof to it, a copy of said release being set out.

In the fourth paragraph it is admitted that appellee Apman was beneficiary in a certain certificate of insurance, as averred in the complaint, but it is averred that after his wife's death and prior to the institution of the action he made a written assignment of his interest therein to John Brooks —such assignment, in due form and acknowledged before a notary public, being set out; that at the time such assignment was made said Brooks agreed in writing to collect the amount due on said certificate, and, after paying the funeral expenses of said appellee's wife, to pay the residue thereof to him. This contract is also incorporated in the answer. It is then averred that said Brooks insisted upon appellant's paying the amount of said certificate to him; that it investigated the cause of the death of appellee Apman's wife, and found that during the last few days that she was alive said appellee made violent threats that he would kill her; that he cursed and threatened her while she was sick in bed; that he struck and wounded her, and that his conduct toward her was such that her relatives, in order to prevent further violence from him, removed her from her home to that of her brother; that at the time of her death numerous bruises and wounds were found upon her body, caused by blows received from said appellee, and which were the prox-

imate cause of her death; that appellant did not believe that it was liable to said appellee upon said certificate, and refused payment thereof, notifying both said appellee and Brooks to that effect; that thereafter said Brooks, with the authority, consent and coöperation of said appellee, compromised and settled said claim for $355, which amount was paid to said appellee with the consent of said Brooks, and said appellee and said Brooks, in consideration of said settlement and the payment of said sum, executed a contract—the instrument being set out—acknowledging satisfaction of said certificate and discharging appellant from liability thereon; that said appellee when he executed said contract was not intoxicated to such an extent that he did not know what he was doing, and if he was so intoxicated appellant did not directly or indirectly aid in bringing about such condition; that said John Brooks and C. C. Benfer, brothers-in-law of appellee Apman, his deceased wife's son, and other persons were present when said contract was executed; that if said appellee could not read it he could have had it read to him by them if he so desired.

Demurrers for want of facts were overruled to these affirmative paragraphs of answer, and a reply of general denial filed. The court instructed the jury, at appellee Apman's request, that "this suit is brought by Charles Apman against the Supreme Council of Knights and Ladies of Columbia to recover damages which the plaintiff claims to have sustained by reason of the false and fraudulent representations of one Kennedy, the agent of said defendant society, in obtaining from the plaintiff a release, assignment, and settlement of an insurance policy, issued by said defendant society to said plaintiff's wife, and made payable at her death to plaintiff, for a sum much less than the amount which was due and payable under the terms of the policy of insurance." The court instructed the jury at appellant's request, "that in order to avoid the contract of settlement and compromise involved in this action on the ground of

intoxication, if you find that there was a contract of compromise and settlement thereof, it is essential," etc.

The measure of damages as stated to the jury upon appellee Apman's request was as follows: "The true measure of damages would be the difference between the amount which he was induced to accept and the amount which he would have been entitled to according to the terms stated in the policy." If the contract of release were set aside, and the recovery based upon the certificate, then such instruction was correct; but if the action is to recover damages caused by the fraud of appellant in inducing appellee to settle and discharge it from liability upon its contract such action ratifies the release (*Cohoon* v. *Fisher* [1897], 146 Ind. 583, 36 L. R. A. 193) and the measure of damages would be the difference between the amount paid and the actual value of the thing surrendered.

In *Gould* v. *Cayuga County Nat. Bank* (1885), 99 N. Y. 333, 2 N. E. 16, the court said: "And here we may turn to the other branch of the argument, that the action is an attempt to recover under the mask of damages the extinguished balance of the original obligation. That is not the effort and such is not the true measure of damages. If it was, very much of the appellant's argument would be difficult to answer. There having been no rescission of the compromise agreement, that must stand, and it discharges forever the original contract and extinguishes all right to any balance due upon it. In no form of action while the compromise stands can that balance be recovered. But because of that fact it does not follow that merely nominal damages resulted from the fraud. While their measure is not the extinguished balance, and cannot be without making the rule as to rescission an idle and useless formality, its measure is indemnity for the real loss sustained, which may very well prove to be less, and even much less than the contract balance. Such damages will compensate the fraud

as make the compromise, which is to stand, an honest and fair one instead of a dishonest and fraudulent one.    Damages which leave it stand but purge it of fraud are what should be recovered.    What the plaintiffs sold and the defendants bought was not a conceded but a disputed claim; worth, therefore, ordinarily, something less than its face for purposes of sale, transfer or cancelation; how much less depending upon the continuing solvency of the debtor, and the probabilities of its successful enforcement." *Nysewander* v. *Lowman, supra; Johnson* v. *Culver, supra.*    The adoption of appellee Apman's theory as to the character of the action must, therefore, result in the reversal of the judgment for error in the giving of the fourth instruction as to the measure of damages, an exception thereto having been duly reserved.

Assuming that the theory of the complaint is as asserted by appellee Apman, and also assuming that it was sufficient upon that theory to withstand the demurrer, it is still necessary to reverse the judgment because of an incurable defect.    The fraud charged is attributed directly to Kennedy, and to no one else.    Neither Brooks nor the other relatives of Mrs. Apman are charged with having been in collusion with Kennedy or appellant. Indeed, it is averred, in effect, that both Brooks and appellee Apman relied upon Kennedy's representations and were deceived thereby.

Appellee Apman was a witness in his own behalf.    Upon his own sworn statement he was not entitled to recover. *Wortman* v. *Minich* (1901), 28 Ind. App. 31.    He testified that his wife was buried on August 14; that he had met Kennedy in lodge; that he went to Brazil on October 14 and got word from Brooks to come right back to Terre Haute; that he went on the next car, and was met at the car by his brothers-in-law Brooks and Benfer, the three of them "went right to the Terre Haute House."    Continuing: "What occurred there at the Terre

Haute House? A. I ask Mr. Brooks, I says: 'Is Mr. Kennedy here?' He says: 'Yes, but he don't want to see you.' I says: 'He don't.' I says: 'I want to see him.' He says: 'No, let me tell you. You don't want to go up there to see him.' I says: 'I am going up to see him just the same.' What did you do? A. I went upstairs and met Mr. Kennedy in his room. What was the first thing you said? A. I says: 'Mr. Kennedy, how-de-do. I don't know whether you know me or not.' He says: 'I believe I do,' and I went and shook hands with him, and set there for a few minutes, and I says: 'Mr. Kennedy, what is the trouble I can't get this policy through?' I says: 'You know everything was all paid up.' I says: 'There is no dues, there is nothing due on it at all.' I says: 'If you people are going to do this class of business the best we can do is to pull out.' He says: 'Brooks has got something to give you.' I says: 'What is it?' He says: 'He has got some papers,' and just then I stepped on the elevator and stepped down, and these papers is what I saw. What did he say, if anything, on the subject about seeing Brooks and signing some papers? A. I don't believe he hardly said anything. He just says: 'Brooks has come in for this now.' He says: 'You go down and see Brooks, and whatever Brooks does with you is all right.' What did you do? A. I went right down in the elevator, and Brooks showed me the papers. Where did you meet Brooks? A. In the office below. What was the first thing you said to Brooks when you saw him, if you remember? A. He was the one that says 'If you will come over here I have got something for you to sign,' and we were all pretty drunk. I looked at this paper and says: 'Here, I can't read this.' Part of it was typewritten and part of it was written in pen and ink. I looked at it and says: 'What is this, if you know.' He says: 'Here is a paper for $355, and that's all there is to it.' I says: 'I suppose the balance of the money I will get later on,' and he says: 'You will,' and that's the reason I

signed it. Did you read it? A. No. Did anybody read it to you? A. No, I only just took his word for it. When you were up there did Kennedy ask you to sign the paper Brooks had? A. Kennedy says: 'You and Brooks for it,' so I left him and went down stairs. What, if anything, did Kennedy say to you about Brooks having the paper in his possession, and you were to see Brooks and sign it? A. He never said anything like that. * * * Was Kennedy present when you signed this paper? A. No. * * * I will ask you if you have had any other talk with Kennedy since the death of your wife, down to this time, other than the talk you have testified about? A. No, sir. * * * How long were you in his room? A. About five minutes."

Appellant's counsel have referred us to testimony tending to show that appellee Apman was intoxicated at the time he executed the release. The transaction took place in the forenoon, but the entire testimony relative to his habits in that respect adds probability to the conclusion. Whether his normal condition was interfered with is not so certain. They have also presented a forceful argument as to the sufficiency of the evidence to sustain the finding of fraud. Such argument is based upon the assumed but unstated hypothesis that every one cognizant of the transaction was engaged in the carrying out of a conspiracy to defraud appellee Apman. The hypothesis is not warranted, and the argument, therefore, is inconclusive.

Judgment is reversed, and the cause remanded, with instruction to sustain appellant's motion for a new trial, and for further proceedings not inconsistent herewith.

Myers, C. J., Hadley, Watson and Rabb, JJ., concur. Comstock, J., absent.