[Sac. No. 242. Department Two.—September 21, 1897.]

J. R. CLOWDIS, Respondent, v. FRESNO FLUME AND IRRIGATION COMPANY, Appellant.

118 315
136 163
136 641

NEGLIGENCE—MASTER AND SERVANT—CARELESS DRIVING OF BULL IN HIGHWAY—SERVANT'S KNOWLEDGE OF VICIOUSNESS—IGNORANCE OF MASTER.—Where injuries were inflicted upon the plaintiff by a vicious bull negligently driven in the highway by servants of the defendant, to whom the care of the animal was intrusted, without their securing it in any way, notwithstanding knowledge on their part that the bull was wild and would fight, and that it had previously knocked another man down on the same day, and had threatened attack upon others, the defendant is liable for such injuries, although he may have had no previous knowledge of the viciousness of the bull.

ID.—INJURY FROM VICIOUS ANIMAL—KNOWLEDGE OF OWNER—KNOWLEDGE OF SERVANT, WHEN IMPUTED TO MASTER.—In order to enforce the liability of the owner of an animal for injuries inflicted thereby to another person, it must appear that the animal was in fact vicious, and that the owner had knowledge of its viciousness, actual or imputed; and though knowledge by or notice to a servant of the viciousness of the master's animal, with respect to which he is charged with no duty, is not notice to the master, yet the knowledge of a servant to whom an animal is intrusted, of its vicious or ferocious disposition, is the knowledge of the master, sufficient to render him liable for injuries caused by such animal while in the custody and control of such servant.

ID.—OWNER WITH NOTICE OF VICIOUSNESS, LIABLE AS INSURER—NEGLIGENCE IMMATERIAL.—Where injury is caused by a vicious animal which the owner knew to be vicious, at the time of and previous to the injury, the owner is liable as an insurer, and the question of negligence in such case is immaterial.

ID.—REPRESENTATION OF MASTER BY SERVANT—DUTY TO PUBLIC—IMPROPER PERFORMANCE.—Where a duty is owed to the public, a servant to whom its performance is intrusted represents the master, however subordinate or menial his rank may be, and within the scope of his employment to perform such duty, his knowledge is the master's knowledge, and his acts the master's acts, and the inquiry as to the master's responsibility is the same as if he ·had personally entered

upon the performance of the duty, under the same circumstances, and with the same knowledge possessed by his servant; nor can a failure to perform such duty, or its improper performance, be excused by showing that its execution was intrusted to a servant even of approved carefulness, knowledge, or skill, but it must be further shown that the servant in the particular matter exercised the full degree of care, and showed the requisite amount of skill.

ID.—NEGLIGENCE OF SERVANTS—KNOWLEDGE OF MASTER IMMATERIAL—KNOWLEDGE ACQUIRED BY SERVANTS DURING PERFORMANCE.—The master is liable to third persons for injuries caused by the negligent performance of the duty of his servants while acting within the scope of their employment, and, in such case, all question as to the master's knowledge is eliminated as immaterial; and the fact that additional knowledge of facts material to the question of negligence of such servants was acquired by them after the employment was undertaken, and that the master was wholly ignorant of those facts, cannot exonerate the master from liability for the negligence of his servants.

ID.—JOINDER OF CAUSES OF ACTION IN ONE COUNT—INJURY FROM ANIMAL KNOWN TO BE VICIOUS—NEGLIGENCE OF SERVANTS—INSTRUCTIONS UPON EACH CAUSE OF ACTION—CONFUSION WITHOUT PREJUDICE—APPEAL.— Where the complaint joined in one count two distinct causes of action, one for injury caused by a vicious bull of defendant, which defendant knew to be vicious, and the other for injury caused by the negligent performance of duty by the servants of the defendant in the care and driving of the animal intrusted to them by the defendant, and issue was joined upon each cause of action, without objection to their union in one count, and the evidence upon each cause of action was sufficient to uphold a verdict for plaintiff upon either, an instruction that before plaintiff could recover he must establish the facts that the bull at the time he inflicted the injury was vicious, and that defendant had knowledge of its vicious character, and another instruction that defendant was liable for injury resulting from the negligence of defendant's employees in the performance of their duty, are not contradictory or self-destructive; and whatever confusion may have resulted from failure to point out clearly to the jury the full distinction between the two causes of action must have tended to defendant's advantage, and is not ground for reversal of a judgment in favor of plaintiff, upon defendant's appeal therefrom.

ID.—DAMAGES—VERDICT NOT EXCESSIVE—CONFLICTING EVIDENCE—PROOF FOR PLAINTIFF.—Where there was conflicting evidence as to the nature and permanence of the injuries received by plaintiff from the attack of a vicious bull, for which defendant is liable, but, on the part of the plaintiff, it was shown that the coccyx was fractured, the muscles of the region atrophied, the sciatic nerve made tender and painful to pressure, and that there were other symptoms of spinal injury, upholding a finding that plaintiff's health was seriously impaired, if not positively wrecked, it may not be said that a verdict for the plaintiff for damages in the sum of five thousand five hundred dollars was excessive.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. E. W. Risley, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, for Appellant.

The corporation defendant was not chargeable with the knowledge acquired by its mere ministerial servants. (4 Thompson on Corporations, sec. 5237; Pomeroy's Equity Jurisprudence, sec. 668; Tiedeman on Equity, sec. 100; *Fairfield Sav. Bank v. Chase,* 72 Me. 226; 39 Am. Rep. 219; *Consolidated Coal Co. v. Block etc. Co.,* 53 Ill. App. 565; *Grant v. Cole,* 8 Ala. 519; *Shaver v. New York etc. Transp. Co.,* 31 Hun, 55; *Stiles v. Cardiff etc. Co.,* 33 L. J. Q. B. 310; *Twigg v. Ryland,* 62 Md. 380; 50 Am. Rep. 226; *Labbe v. Corbett,* 69 Tex. 503.) Knowledge by the owner of viciousness is essential to his liability for injuries caused by a vicious animal. (*Laverone v. Mangianti,* 41 Cal. 138; 10 Am. Rep. 269; *Finney v. Curtis,* 78 Cal. 498; *Wilkinson v. Parrott,* 32 Cal. 102; *Ficken v. Jones,* 28 Cal. 618.) A new trial should be granted for conflicting and contradictory instructions. (*Haight v. Vallett,* 89 Cal. 245; 23 Am. St. Rep. 465; *Brown v. McAllister,* 39 Cal. 573; *Aguirre v. Alexander,* 58 Cal. 21, 27; *McCreery v. Everding,* 44 Cal. 246; *Sappenfield v. Main Street etc. R. R. Co.,* 91 Cal. 48.) Also, for excessive and unconscionable damages. No constructive malice could be imputed to the defendants to warrant exemplary damages.

F. Laning, and M. K. Harris, for Respondent.

The owner of a vicious animal, knowing its vicious propensities, is responsible as an insurer for all injuries sustained therefrom by a person free from fault. (*Laverone v. Mangianti,* 41 Cal. 138; 10 Am. Rep. 269; *McCaskill v. Elliott,* 5 Strob. 196; 53 Am. Dec. 706; *Partlow v. Haggarty,* 35 Ind. 179; *Popplewell v. Pierce,* 10 Cush. 509; *Caldwell v. Snook,* 35 Hun, 73.) If one drives a bull along a highway, knowing its propensity to attack and gore persons, and takes no precautions to prevent it, he is responsible if such an attack is made. (Cooley on Torts, 409; *Hewes v. McNamara,* 106 Mass. 281.) The knowledge of a servant, to whom an animal is intrusted, of its viciousness, is the

knowledge of the master, as respects liability for injuries committed by it. (*Brice v. Bauer*, 108 N. Y. 428; 2 Am. St. Rep. 454; Cooley on Torts, 406, note.)   Defendant will be presumed to know of the known and ordinary propensities of a bull, especially of a wild bull, to attack people.  (*Barnum v. Terpenning*, 75 Mich. 557; *Linnehan v. Sampson*, 126 Mass. 506; 30 Am. Rep. 692.) ' The defendant is responsible for the negligence of its servants or agents while in charge of the bull, and acting in the scope of their employment.   (1 Parsons on Contracts, 118; Bishop on Noncontract Law, secs. 436–40, 442, 445; *Weed v. Panama R. R. Co.*, 17 N. Y. 362; 72 Am. Dec. 474; Morawetz on Corporations, secs. 89, 90, 91, 95; *Cohen v. Dry Dock etc. R. R. Co.*, 69 N. Y. 170; *Barnum v. Terpenning, supra.*)   The instructions, taken as a whole, properly present the law applicable to the case, and any seeming conflict between isolated parts is not ground for reversal.   (*People v. Turcott*, 65 Cal. 126; *People v. Dennis*, 39 Cal. 636.)   The amount of the verdict was within the discretion of the jury, and was not excessive, not being obviously disproportionate to the injury proved by plaintiff's evidence.   (*Morgan v. Southern Pac. Co.*, 95 Cal. 501; *Gorman v. Southern Pac. Co.*, 97 Cal. 1; 33 Am. St. Rep. 157; *Aldrich v. Palmer*, 24 Cal. 513; *Wheaton v. North Beach etc. R. R. Co.*, 36 Cal. 590.)

HENSHAW, J.—Plaintiff recovered damages for injuries inflicted by a vicious bull, the property of defendant.  He averred that, prior to the attack upon him, the bull was of a vicious disposition and dangerous character, and that the fact was known to defendant, its agents, and employees.  He also averred that the injury was occasioned by the negligent conduct of defendant's servants engaged in driving the bull upon a public highway. Defendant appeals from the judgment and from the order denying a new trial.

The facts disclosed by the evidence are as follows: In April, 1895, the defendant, which was engaged in the lumber business in the Sierra Nevada mountains, in Fresno county, sent two of its employees, John Lovelace and G. W. Treece, to a ranch on Kings river known as "The Grant," where its cattle had been pasturing during the winter, to bring them to the mountains.

There were some thirty-six head, consisting of bulls and steers. The bull in question was wild, and the men had difficulty in yoking him. On the second day after they started, this bull became tired and troublesome to drive and was allowed to remain temporarily at the ranch of Ben McCloskey, a place about four miles from Sanger, while the other cattle were driven on. About noon, during the absence of the drivers, McCloskey and his neighbor, Martinez, went into the corral to look at the animal, and while they were walking around he charged upon Martinez, knocking him down, jumped the fence, and went out into the grainfield. In the afternoon Treece and Lovelace returned for the bull, when McCloskey related to them what had taken place. They asked why he had not corraled the animal. McCloskey answered that he had only a single-barreled shotgun, and would not undertake to corral that bull with anything less than a Winchester rifle. They secured the bull, and themselves on horseback drove him along the county road in the direction of the town of Sanger. On the road they were overtaken by two men walking. These men endeavored to pass the bull and walk ahead, when the bull turned as though he would charge them. One of the drivers rode between them and the bull and warned them to look out, that the bull had already knocked one man down and would fight. Proceeding down the road they approached a culvert, where several men were standing. A short distance from this bridge the plaintiff was staking a horse on land adjoining the road, and which he had at that time leased and was in possession of. As the drivers and the bull approached one of the drivers remarked: "We will see some fun," or "Watch these fellows scatter when we come up there with the bull." Something attracted the attention of the men, and, not liking the appearance of the bull, they made for an adjoining fence. Clowdis, who was a short distance away and behind his horse, did not observe the danger, but hearing a voice, he stepped out from behind his horse, and seeing the bull on the bridge asked if he would fight. The question was answered by the bull, which at once charged. Clowdis turned and ran for an outhouse some little distance off, but before he reached it he was overtaken, tossed in the air, and received the injuries complained of. During all of this time the bull was driven ahead of the men,

and was not secured in any way. He was six years old, and up to October, 1894, had been accustomed to run with a herd of dairy cows on the range in the mountains. In October, 1894, he was purchased by the defendant and broken to an ox team, and worked about six weeks and then placed upon pasture, where he remained until April, 1895. Witnesses for the defendant testified that during the six weeks when he worked he was a nervous and high-strung animal, but before this time had not displayed a disposition to attack.

Over these facts there is little or no dispute; but under them appellant contends that it is entitled to a reversal. Herein it is insisted that the evidence fails to show foreknowledge by defendant of the vicious disposition of the animal.

It is well settled in cases such as this that the owner of an animal, not naturally vicious, is not liable for an injury done by it, unless two propositions are established: 1. That the animal in fact was vicious; and 2. That the owner knew it. (*Finney v. Curtis,* 78 Cal. 498.) Thus, if an animal theretofore of peaceable disposition, while in charge of the master or of a servant, suddenly and unexpectedly, either through fear or rage, inflicts injury, neither is responsible, if at the time he was in the exercise of due care. But, conversely, the owner of such an animal knowing its vicious propensities is liable for injury inflicted by it upon property or upon the person of one who is free from fault. (*Laverone v. Mangianli,* 41 Cal. 138; 10 Am. Rep. 269.)

These propositions are accepted by appellant's counsel; but their contention in argument is that the knowledge by defendant's servants of the viciousness was acquired at such time and under such circumstances that it could not be conveyed to the defendant, and, therefore, could not be imputed to it in law; and, further, that the men engaged in driving the bull were not agents of the corporation, but mere servants, not having general charge of the animal, but sent upon a limited mission with regard to it, and that for this additional reason their knowledge cannot be held to be the knowledge of their employer.

It is quite true that knowledge by or notice to a servant charged with no duty in the matter, of the vicious propensities of an animal owned by the master, is not notice to the master. The rule, however, is that a servant's knowledge, to whom an animal is in-

trusted, of its ferocious disposition, is knowledge of the master sufficient to render the latter liable. (*Brice v. Bauer*, 108 N. Y. 428; 2 Am. St. Rep. 454; Cooley on Torts, 406, and note.)

In the present case Lovelace and Treece had been put in complete charge of the bull. It is a fundamental and most important principle of the law governing the responsibility of masters that whatever duty they owe to the public (or to their employees) must be performed, and a failure to perform, or improper performance, cannot be excused by a showing that execution was delegated to a servant even of approved carefulness, knowledge, or skill. It must further be shown that the servant in the particular matter exercised the full degree of care and showed the requisite amount of skill. And this is true, however subordinate or menial may be the rank of the servant. Whatever be his position, in that special employment he represents the master, and within its scope his knowledge is the master's knowledge, his acts the master's acts. (*Higgins v. Williams*, 114 Cal. 176; *Donnelly v. San Francisco Bridge Co.*, 117 Cal. 417.) Everyone, whether acting individually or through agents, is bound to exercise ordinary care to prevent injury to the person or property of another. (Civ. Code, secs. 1708, 1714, 2330, 2338.) Therefore, when, as here, Lovelace and Treece had been sent upon an independent mission, and put in complete charge of the animal, they stood in the performance of their task in the place of the defendant, and the question of defendant's responsibility will be answered as may be answered the inquiry: What would have been the master's responsibility and liability had he personally been in charge of the animal? To this there can be but one answer. He would have been liable. Twice before on that very day had the bull evinced its ugly disposition by attacks actual and threatened. Here was ample proof of the fact of viciousness and of the knowledge of that fact brought home to the master.

There is yet another and independent view of the matter which may be taken, and in this is eliminated all question of the master's knowledge. That view turns upon the master's liability for the negligent performance by a servant of a duty within the scope of his employment. The driving of the bull upon the highway was not only within the employment of Lovelace and Treece,

but it was their express task. In the performance of this duty, if injury was occasioned to one without fault by reason of their negligence, the master was liable. At the outset of the drive, when the men may be assumed to have believed that the beast was gentle, if it had suddenly and unexpectedly attacked and injured some person, it might well be argued that they were performing their task with due care, and that for the unexpected onslaught the master was not liable. But when thereafter while engaged in this undertaking they acquired knowledge of the animal's evil propensities, it became a question of fact for the jury whether or not they exercised the requisite degree of care in their subsequent management of it. The circumstance that the additional knowledge was acquired by them after the employment was undertaken, and was not known either to them or to their employer at the time it commenced, would not exonerate the latter. If the conductor of a passenger train should at any time during the journey discover a defective wheel and, continuing the trip, injury should thereby result, the company would not be exonerated because the knowledge was acquired after the train had started. Yet there is no difference in principle between the cases, and what difference exists is merely in the degree of care exacted by law.

Precisely such a cause of action as the one which we have been considering was that of *Ficken v. Jones,* 28 Cal. 618; and another in which the question is considered with much elaboration is that in *Barnum v. Terpenning,* 75 Mich. 557.

This is unquestionably a distinct cause of action from that which would hold the master responsible by reason of his fore·knowledge; but the complaint in this case sufficiently charges upon both causes of action. True, they are joined in one count, but no objection was made to the pleading upon this ground.

Appellant complains of the instructions given by the court as being contradictory, and self-destructive. In one part of the charge the jury was instructed, in effect, that defendant was liable for injury resulting from the negligence of its employees in the performance of a given duty. In another part the jury was told that before plaintiff could recover he must establish the facts that the bull, at the time he inflicted injury, was vicious, and that defendant had knowledge of its vicious character.

But this grievance has its foundation in appearance rather than in substance. Undoubtedly, it would have been well founded had the pleading been confined to a charge that injury was occasioned by an animal which defendant knew to be vicious at the time. In such instances the owner is an insurer against the acts of the animal to one who is injured without fault, and the question of the owner's negligence is not in the case. (*Laverone v. Mangianti supra*; 10 Am. Rep. 269.) But the action at bar charged not only upon this but upon another and distinct cause of action, namely, an action for damages occasioned by the negligent performance upon the part of defendant's servants of an employment with which they were intrusted. Here, proof of negligence was essential to a recovery. It would certainly have been better if the instructions had more clearly recognized the distinctions between these two causes of action. But in and of themselves they were not wrong in point of law, nor, under a complaint charging upon both causes of action, were they contradictory. Both causes of action were here charged, though joined in one count; upon both issue was joined, and to both evidence was addressed sufficient to uphold the verdict of the jury upon either. The instructions could not then have injured appellant, and, if, by failing clearly to recognize the distinctions pointed out, they served to confuse the jury, that confusion must certainly have tended to defendant's advantage.

The jury rendered a verdict for plaintiff in the sum of five thousand five hundred dollars. There was, as is usual, much conflict in the testimony of the physicians over the nature and permanency of the injuries. But on the part of plaintiff it was shown that the coccyx was fractured, the muscles of the region atrophied, the sciatic nerve tender and painful to pressure, with other symptoms of spinal injury, upholding a finding that plaintiff's health was seriously impaired, if not positively wrecked. It may not be said under such a statement that the verdict was excessive.

The judgment and order appealed from are affirmed.

McFarland, J., and Temple, J., concurred.