## West Chicago Street Railroad Co. v. Mary Walsh.

1. CARRIERS OF PERSONS—*When the Relation of Carrier and Passenger Ceases.*—When a passenger alights from a car, it having stopped at a safe place for such purpose, the relation of the company to such passenger as a common carrier, and its duty incident to such relation, ceases.

2. ANIMALS—*Mansuetæ et Feræ Naturæ.*—The distinction between the liability of the owner of animals kept for domestic use or convenience (animals *mansuetæ naturæ*), such as horses, cattle, dogs and the like, and the owner or keeper of wild and savage beasts (*feræ naturæ*), as lions, tigers, bears, etc., is well settled. In respect to the latter class, the owner is conclusively presumed to have notice that they are vicious and dangerous, and if he neglects to keep them properly secured, he is liable for injuries committed by them, without any proof of his knowledge of their viciousness; while, on the other hand, the owner of animals which, as a species, are domesticated, is not liable for injuries done by them, unless he is proved to have had notice of the inclination of the particular animal complained of to commit such injuries, there being no presumption that animals of that species are vicious or dangerous.

3. SAME—*Injuries by—Burden of Proof.*—In case of injury to the person by a domestic animal not naturally inclined to commit mischief, it must appear, to warrant a recovery, that the animal had a mischievous propensity, and that the owner had notice thereof.

**Trespass on the Case.**—For injuries by a domestic animal. Trial in the Superior Court of Cook County: the Hon. JOSEPH E. GARY, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Reversed. Opinion filed October 27, 1898.

### STATEMENT.

Case by appellee for personal injury. The original declaration, filed August 22, 1895, contains one count. The count avers that May 23, 1894, the plaintiff (appellee) became a passenger on defendant's electric car running on Ashland avenue, to be carried to and near an alley at Austin avenue, and thence southward on certain of defendant's horse cars to Madison street, and that it was the duty of defendant to safely carry her to said alley, the place of transfer from said electric cars, and thence by horse railway cars to Madison street, but that plaintiff, while descend-

ing from defendant's car to be by defendant transferred to another car, was, by the negligence and carelessness of defendant's servants in charge of defendant's horses, at the said place of transfer, carelessly and negligently kicked by the defendant's horse in charge of defendant's servants, *per quod* plaintiff was injured, etc. September 30, 1897, the plaintiff, by leave of court, filed two additional counts. The first additional count charges that May 23, 1895, plaintiff was a passenger on an Ashland avenue horse car; that the car stopped at and near a certain alley on Ashland avenue aforesaid near to Austin avenue aforesaid; and thereupon the plaintiff, desiring to go toward and upon Austin avenue, descended from the said car at the place where it was so stopped by defendant in Ashland avenue aforesaid, for the purpose of walking to Austin avenue aforesaid, and in so doing the plaintiff undertook to and did cross over the public highway and street, Ashland avenue, as she lawfully might, using all due care and caution in so doing for her personal safety. And the plaintiff further avers that the defendant then and there had certain teams of horses upon said street in charge of its servants and used by it in operating said street railway cars on Ashland avenue aforesaid, and that said servants of the defendants so in charge of its said horses then and there so carelessly, negligently and wrongfully rode, drove and conducted said horses upon said street that by and through the mere negligence of the defendant's servants in charge of said horses, and for want of proper control and management of said horses on the part of said servants so conducting, riding and driving said horses upon said street, the plaintiff was then and there, without fault on her part, kicked by one of said horses with great force and violence.

The second additional count was that the defendant was the owner of a large number of horses used by it, the defendant, in and about its business as a street railway corporation, and the plaintiff was on the day and year aforesaid, lawfully on and in a certain public highway in the city of Chicago, called Ashland avenue, near to and inter-

secting with Austin avenue in said city and county, and that while she, the plaintiff, was then and there in and upon said public highway, and was exercising all due care and caution for her safety and to avoid injury to her person, the defendant, by its servants in charge of certain of said horses, negligently and carelessly drove said horses close to and past said plaintiff, and then and there and by and through the mere negligence and carelessness of the defendant's servants in charge of said horses in failing to control the same, and in failing to let said horses pass at a safe distance from the plaintiff, she, the plaintiff, was kicked with great force and violence by one of said horses.

Appellant pleaded the general issue, and also pleaded the statute of limitations to the additional counts. The jury found appellant guilty, and assessed appellee's damages at the sum of $1,000, and appellee had judgment. Appellant's attorney, at the close of the plaintiff's evidence, moved the court to exclude plaintiff's evidence from the jury, and requested the court to give to the jury a written instruction presented to the court, instructing the jury to find the defendant not guilty. The same motion was made and instruction asked at the close of defendant's evidence.

The facts are substantially as follows : Ashland avenue is a north and south street, and Austin avenue and Indiana street are east and west streets. Appellant had two tracks on the street, the east track being the north-bound and the west one the south-bound track. The cars operated on these tracks are horse cars. Ashland avenue is intersected by Indiana street and Austin avenue, the former street being a block north of the latter. Indiana street is an east and west street, sometimes mentioned by the witnesses as Ferdinand street. The appellee, in company with her sister, became a passenger on appellant's horse car at a point quite a distance north of Austin avenue, to be carried south, and, as she alleges in her declaration, to or near the alley above mentioned. Near the alley on Ashland avenue was the usual place to change the horse cars. The appellee lived on Austin avenue about two blocks east of Ashland avenue. The car on which appellee was, was on the west or south-

bound track and stopped at the usual stopping-place near the alley. Appellee and her sister then alighted from the west or right side of the rear platform of the car and turned around the dashboard on the rear end of the car for the purpose of going to the sidewalk on the east side of Ashland avenue. Immediately after they alighted the car moved away south on Ashland avenue. There were four of appellant's horses standing on Ashland avenue with their heads toward the north, two in front and the other two immediately behind them. There was a young man on one of the front horses, apparently in charge of the horses. The horses stood, as appears from the evidence, northeast from the rear end of the car when the car stopped. The appellee testified that as she passed around the rear end of the car, and walked straight east, the horses were north of her, their heels being distant from her about the length of a table which she pointed out in the court room. Appellee's sister testified that they went north, right back of the car, to get on the sidewalk. Appellee says that as she approached the horses, the west one of the rear horses "moved a little bit, acting as though he was uneasy," but she did not pay much attention to him. As appellee passed the horses, the one she had noticed "acting as though he was uneasy," kicked her behind the right knee. The evidence shows, and there is no claim to the contrary, that the place where the car stopped was the usual stopping place and was a safe place at which to stop; that the only horses on Ashland avenue at that place at the time the car stopped, except the horses drawing the car, were the horses above mentioned, and that the street south to Austin avenue, where appellee lived, was clear. The time was between three and four o'clock in the afternoon, and the weather clear and bright. There is no evidence that there was any obstruction to prevent appellee from going from the car to the west sidewalk of Ashland avenue when she alighted from the west side of the rear platform.

ALEXANDER SULLIVAN, attorney for appellant; EDWARD J. MCARDLE, of counsel.

Grant Foreman and John C. Wilson, attorneys for appellee.

Mr. Justice Adams delivered the opinion of the court.

When appellee alighted from the car, the car having stopped at a safe place at which to alight, the relation of appellant to her as a common carrier, and its duty to her incident to such relation, ceased. Creamer v. West End Ry., 156 Mass. 320; Hutchinson on Carriers, Sec. 613.

When appellee alighted she was on the public highway; appellant had no control over her and owed her no duty as a carrier, and, as the owner of the horse which kicked her, owed her no duty beyond that which any stranger, being the owner of the horse, would have owed to another stranger on the public highway. The horses were lawfully on the highway, as was also the appellee. There is no evidence that the horse was of a vicious disposition, or that he had ever before kicked or injured any one. In Moss v. Pardridge, 9 Ill. App. 490, the law is thus stated:

"The distinction between the liability of the owner or possessor of animals kept for domestic use or convenience, animals *mansuetæ naturæ*, such as horses, cattle, dogs and the like, and the owner or keeper of wild and savage beasts, *feræ naturæ*, as lions, tigers, bears, etc., is well understood. In respect to the latter class, the owner is conclusively presumed to have notice that they are vicious and dangerous, and if he neglects to keep them properly secured, he is liable for injuries committed by them, without any proof of his knowledge of their viciousness; while, on the other hand, the owner of animals which, as a species, are domesticated, is not liable for injuries done by them, unless he is proved to have had notice of the inclination of the particular animal complained of to commit such injuries, there being no presumption that animals of that species are vicious or dangerous. Shearman & Redfield on Negligence, Sec. 188; May v. Burdett, 9 Q. B. 101; Vrooman v. Lawyer, 13 Johns. 339; Wormley v. Gregg, 65 Ill. 251. It was, therefore, incumbent on the plaintiff to aver and prove

knowledge on the part of the defendant that the dog in question was of a vicious disposition and inclined to attack persons." See also Cooley on Torts (2d Ed.), Sec. 342, top p. 403; Stumps v. Kelly, 22 Ill. 140; Mareau v. Vanatta, 88 Ib. 132.

The cases cited merely announce the common law doctrine that, in the case of injury to the person by domestic animals not naturally inclined to commit mischief, it must appear, to warrant a recovery for the injury, that the animal had a mischievous propensity, and that the owner had notice thereof. We can not avoid thinking that the action was brought on the erroneous theory that appellant, at the time of the alleged injury, owed to appellee some duty as a common carrier, and that it would not have been brought had the horse been owned by some one other than appellant. We are of opinion that the evidence fails to prove negligence on the part of appellant, and that appellee, in passing so close to the horse, after noticing that he was restive and uneasy, which she could have easily and without inconvenience avoided, was not exercising ordinary care. These considerations being decisive of the case, it is unnecessary to discuss other questions argued by counsel. The judgment will be reversed.