## INDIANAPOLIS ABATTOIR COMPANY *v.* BAILEY.

[No. 8,084. Filed October 29, 1913.]

1. ANIMALS.—*Viciousness.—Owners.—Liability.*—When an animal is by nature wild and ferocious and calculated to injure. mankind, its•owner will be charged with negligence in permitting it to run at large or to come in contact with and injure persons who are themselves without fault; but in the case of domestic animals, such as a horse, the owner must have knowledge, either actual or constructive, of the vicious character of the animal before he may be required to respond in damages for any injuries inflicted by it. pp. 375, 377.

2. ANIMALS.—*Viciousness.—Knowledge of Servant.—Imputation to Master.*—Knowledge by the servants that the master's horse was vicious and had kicking propensities, is chargeable to the master. p. 376.

3. NEW TRIAL.—*Motion.—Time for Filing.—Motion for Judgment on Answers to Interrogatories.*—A motion for new trial and a motion for judgment on the answers of the jury to interrogatories may be properly filed at the same time. p. 377.

4. APPEAL.—*Questions Reviewable. — Instructions. — Briefs. —* In-

structions that are set out in appellant's brief, and properly presented, will be considered, although all the instructions given are not set out therein. p. 378.

5. APPEAL.—*Review.—Instructions.*—In an action for damages from being kicked by a horse, instructions failing to tell the jury that the defendant must have known of some disposition on the part of the horse to kick, or some disposition that would suggest to a man of ordinary prudence and caution that he would kick, were defective. p. 378.

6. RELEASE.—*Rescission.—Fraud.—Mistake.*—A contract releasing a right of action for damages for personal injuries cannot be rescinded in part and affirmed in part, and before it can be rescinded, either for fraud or mistake, the party rescinding must restore anything of value which he may have received in consideration for such release. p. 378.

7. PLEADING.—*Reply.*—The office of a reply is to avoid the facts set out in the answer, and it must not depart from the theory of the complaint. p. 380.

From Superior Court of Marion County (78,167); *Clarence E. Weir,* Judge.

Action by Ollie E. Bailey against the Indianapolis Abattoir Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*George W. Galvin,* for appellee.

SHEA, J.—This was an action by appellee against appellant to recover damages for personal injuries sustained by him while in appellant's employ, attempting to drive one of its horses, which kicked him, causing the injuries complained of. To the complaint in one paragraph, appellant filed an answer pleading (1) a general denial, and (2) a release. Appellee replied in two paragraphs, (1) a general denial, and (2) a special paragraph averring that the release did not cover the injury here sued for. Trial by jury, verdict for appellee. Appellant moved for judgment in its favor on the facts found by the jury in answer to interrogatories notwithstanding the verdict, which motion was overruled, and judgment rendered in favor of appellee for $3,750.

The errors assigned and relied on for a reversal are, the overruling of appellant's motion for judgment on the facts found in answer to interrogatories notwithstanding the general verdict, and the overruling of its motion for a new trial.

The complaint charges, in substance, that appellant was a corporation under the laws of Indiana, engaged in the killing of animals for food, and the sale of meats, in the city of Indianapolis; that appellant employed in its business a large number of men whose duty it was to drive teams owned and used by it in its business; that on April 8, 1907, a certain team was sent out under the care and control of one Charles Peacock, a driver employed by appellant, and appellee was directed to accompany said Peacock as an assistant to deliver appellant's goods; that one of the horses in said team was of a fractious and dangerous disposition, which fact appellant knew, or by the exercise of reasonable care could have known; that appellee knew nothing of the character of said horse, and had no knowledge of its being fractious and dangerous; that appellant negligently failed to notify appellee of the dangerous character of said horse; that the wagon to which said team was hitched had a defective and broken tongue, which was unsafe and dangerous to be used and handled with said horse, of which appellant well knew, and of which fact appellee had no knowledge; that said Peacock, while in the discharge of his duty stopped at a place to deliver meat, and left appellee in charge of said team; that while so in charge of said team, and in attempting to handle the same as his duties required, the tongue of the wagon so negligently and carelessly left, gave way, and said horse became fractious and unmanageable and kicked appellee on the leg, breaking same; that in consequence of the injury so received by the kick of said fractious horse, it became necessary to amputate said leg below the knee, all to appellee's damage in the sum of $15,000.

The second paragraph of appellant's answer pleads the following release as a complete defense to the action:

"Settlement in Full of Claim for Personal Injury. I, Ollie E. Bailey, hereby admit and acknowledge that there has been paid to me in hand this day by Indianapolis Abattoir Company the sum of Two Hundred Dollars in full settlement, accord and satisfaction of any and all claims or demands of every description which I now have or may hereafter have against the said Indianapolis Abattoir Company on account of an accident causing injury to me on or about April 8th, 1907. In testimony whereof, I have hereunto set my hand and seal this 22nd day of August, 1907. Ollie E. Bailey. (Seal). The foregoing agreement was read by Ollie E. Bailey who said that he understood it; that he knew that in signing it he was signing away his right to any further claim for the injuries herein referred to; that he was satisfied with the settlement; and that he signed it of his own free will. Charles Remster, Lida Bailey. Indianapolis, Ind., 521 W. Morris Street, Indianapolis."

Appellee's second paragraph of reply avers, substantially, that at the time appellee signed said release, he was misled and deceived by the attending physician, who was in appellant's employ as its agent, and who was the only physician who had examined him; that said physician repeatedly stated to appellee that he was not seriously hurt; that his leg was healing nicely; that he would soon be well and entirely cured of his injuries, when in fact he was seriously and permanently injured in such a way as to cause the loss of his leg by amputation, necessitated entirely by the injuries sustained by him as set forth in the complaint; that he had no knowledge of the extent of the injuries, or that such injuries would necessitate the amputation of his leg at the time of signing such release; that he relied wholly upon the assurances of said physician and the officers and agents of appellant, who assured him that he would have full and complete use of his leg; that after the execution of the release, his injuries became more serious, and resulted in the

amputation of his leg; that had he contemplated the extent of his injuries, he would not have accepted said sum of $200, and that by the false and misleading statements of appellant's physician and surgeon, and the false and misleading statement of its officers and agents, appellee, in his mentally weak condition was kept in ignorance of his rights in the premises, and of his true condition, and induced to sign the alleged release in said condition for a grossly inadequate consideration. Said release was made broad enough in its terms to cover all damages sustained by this plaintiff, when in truth and in fact the damages resulting to him in the amputation of his leg were unknown to him, he being kept in ignorance thereof by the misleading statements of appellant's physician and its agent and employes and such injuries were not contemplated by him at the time of signing said release, and were not included in the settlement made with appellant.

The jury found in answer to interrogatories that appellee was injured on April 8, 1907, by a kick from a horse he was undertaking to drive. He was not employed as extra driver at that time. On the morning of the accident, a short time before the injury was received, appellee observed that the horse was behaving badly and showing signs of being unruly, and immediately before the accident the horse had been behaving in an unruly manner for several minutes. Appellee could not while attempting to start the team have put himself in a place of comparative safety by moving over behind the horse which was not misbehaving. The stable foreman and one Lawrence did not believe the horse appellee was driving to be an ordinarily gentle one, but it had not, on any prior occasion, shown that it was any more likely to kick than an ordinary horse. The wagon appellee was using had been inspected the Sunday before the accident, and at that time there was nothing wrong with the tongue that would have been revealed by an ordinary inspection. The accident was not caused by any defect in the tongue. Appellee had opportunity to consult with other doctors re-

garding the extent of his injury before signing the release, had he cared to do so. Dr. Gebauer, appellant's physician, knowingly made a false statement to induce appellee to sign the release, by telling him that he had a splendid union, that he would be able to go back to work in a short time, and if he took the settlement, he would have money left when he. was able to return to work. That the release has been rescinded by appellee. Appellee recognized the horse which kicked him, when it became daylight, but could not, on account of the covered wagons, have done so before starting with the load, by giving ordinary attention to his work. He did not know the horse in question might be hitched to his wagon before starting on the trip, because it was out of his line of business. The team was in charge of one Peacock, and it was customary for a driver to make his trips alone in the majority of instances, appellee being an extra man on the wagon.

In support of the first assignment of error, it is urged that the answers to interrogatories disclose the fact that neither appellant nor its agents or servants had knowledge that the animal was either generally a vicious one, or was in the habit of kicking. The interrogatories and answers thereto upon this question are as follows. "7. Q. Had the horse on any occasion prior to this one, shown that it was any more liable to kick than the ordinary horse? A. No. 8. Q. If so, upon what occasion had such disposition to kick been shown? A. None. 9. Q. Did any employe or employes of defendant know of this? A. No. 10. Q. If so, who were they. A. Nobody." Interrogatory No. 11 reads as follows: "11. Q. Did the stable foreman and Mr. Lawrence believe the horse which plaintiff was driving to be an ordinarily gentle horse? A. No." Appellee urges that interrogatory No. 11 is in conflict with interrogatories Nos. 7 to 10, above set out, and that it therefore 1. nullifies whatever force they may have. It is the settled law that the master must have knowledge, either

actual or constructive, of the vicious character of an animal *mansuetae naturae,* such as a horse, before he may be charged with the duty of responding in damages for any injuries that may be inflicted by such animal. *Klenberg* v. *Russell* (1890), 125 Ind. 531, 25 N. E. 596; 4 Thompson, Negligence §4041; *Geo. H. Hammond Co.* v. *Johnson* (1893), 38 Neb. 244, 56 N. W. 967; *Ward* v. *Danzcizen* (1903), 111 Ill. App. 163; *Finney* v. *Curtis* (1889), 78 Cal. 498, 21 Pac. 120; *Reed* v. *Southern Express Co.* (1894), 95 Ga. 108, 22 S. E. 133, 51 Am. St. 62; *Bennett* v. *Mallard* (1900), 33 Misc. (N. Y.) 112, 67 N. Y. Supp. 159; *West Chicago St. R. Co.* v. *Walsh* (1898), 78 Ill. App. 595; *Eastman* v. *Scott* (1902), 182 Mass. 192, 64 N. E. 968; *Mareau* v. *Vanatta* (1878), 88 Ill. 132; *Stumps* v. *Kelley* (1859), 22 Ill. 140; *Moss* v. *Partridge* (1881), 9 Ill. App. 490; *McHugh* v. *Mayor, etc.* (1898), 31 App. Div. 299, 52 N. Y. Supp. 623; *Clowdis* v. *Fresno Flume, etc., Co.* (1897), 118 Cal. 315, 50 Pac. 373, 62 Am. St. 238; *Murray* v. *Young* (1876), 12 Bush. (Ky.) 337; *Beckett* v. *Beckett* (1871), 48 Mo. 396; *Moynahan* v. *Wheeler* (1889), 117 N. Y. 285; *Van Leuven* v. *Lyke* (1848), 1 N. Y. 515, 49 Am. Dec. 346; *Vrooman* v. *Lawyer* (1816), 13 Johns. (N. Y.) 339; *Dufer* v. *Cully* (1871), 3 Ore. 377; *Staetter* v. *McArthur* (1888), 33 Mo. App. 218. In 2 Sherman & Redfield, Negligence (4th ed.) §629 it is said that "the owner of creatures which, as a species, are harmless and domesticated, and are kept for convenience or use, such as \* \* \* horses \* \* \* is not liable for injuries willfully committed by them, unless he is proved to have had notice of the inclination of the particular animals complained of to commit such injuries." If the servants knew

2. that the horse was not ordinarily gentle, or had knowledge of his kicking propensities, such knowledge would be chargeable to the master. *McGarry* v. *New York, etc., R. Co.* (1892), 18 N. Y. Supp. 195; *Geo. H. Hammond Co.* v. *Johnson, supra; Brown* v. *Green* (1899), 1 Pennewill (Del.) 535, 42 Atl. 991; *Corliss* v. *Smith* (1881), 53 Vt. 532;

*Clowdis* v. *Fresno Flume, etc., Co., supra; Muller* v. *McKesson* (1877), 10 Hun (N. Y.) 44; *Brice* v. *Bauer* (1888), 108 N. Y. 428, 15 N. E. 695, 2 Am. St. 454. The rule is 1. otherwise with respect to animals *ferae naturae.* Where an animal is by nature wild and ferocious and calculated to injure mankind, the master will be charged with negligence for permitting it to run at large or to come in contact with and injure persons who are themselves without fault. *West Chicago St. R. Co.* v. *Walsh, supra; Moss* v. *Partridge, supra; Van Leuven* v. *Lyke, supra; Marquet* v. *LaDuke* (1893), 96 Mich. 596, 55 N. W. 1006. Interrogatory No. 7 and answer thereto shows that the horse was not any more likely to kick than the ordinary horse, prior to that time. Interrogatory No. 11 finds that the stable foreman and Mr. Lawrence did not believe the horse to be an ordinarily gentle horse. The master was charged with such knowledge as the foreman had of the vicious habits and disposition of the horse in question. It is impossible to say that the facts found in answer to interrogatory No. 11 are not entitled to some consideration.

The jury in answer to interrogatories expressly finds that the tongue was not defective and that no defect in the tongue caused the accident, so that question is disposed of by the said answers. The answers also expressly find that Dr. Gebauer knowingly made false statements of existing facts, which induced appellee to sign the release, the substance of which false statement is set out, so that question is settled by the findings of the jury.

Appellee very earnestly insists that the court can not properly consider the motion for a new trial. The motion for a new trial, and the motion for judgment upon the 3. answers to interrogatories were filed at the same time. This practice has been approved by both the Supreme Court and Appellate Court of this State, and is regarded as logical and consistent with good practice. The record shows the motion for a new trial was properly filed and duly over-

ruled. *Jacqua* v. *Hartzell* (1891), 1 Ind. App. 500, 27 N.
E. 1005; *Grand Rapids, etc., R. Co.* v. *McAnnally* (1884),
98 Ind. 412; *Leslie* v. *Merrick* (1884), 99 Ind. 180; *Ronan* v.
*Meyers* (1882), 84 Ind. 390.   It is also suggested that
all of the instructions are not set out in appellant's
brief, therefore they should not be considered by this
court, because appellant has not complied strictly with Rule
22 of this court.   The case of *Simplex Appliance Co.* v.
*Western, etc., Belting Co.* (1909), 173 Ind. 1, 88 N. E. 682,
settles this question adversely to appellee's contention.   The
instructions are sufficiently set out, and properly presented
for the court's consideration.

Appellant very earnestly insists that error was committed
by the court in giving certain instructions upon its own
motion.   Instructions Nos. 5, 6 and 8 given by the
court, are subject to the criticism of being too general
in the description of the horse in question.   There must
have been some disposition on the part of the horse to kick,
or some disposition that would suggest to a man of ordinary
prudence and caution that he would kick, and this disposi-
tion must have been known to appellant before there could
be a recovery, and the jury should have been instructed
upon this point.   We do not think instruction No. 7 is sub-
ject to the infirmities pointed out.   The instructions
about which the most serious complaint is made are
those which are based on the theory that the release
given did not cover the whole injury complained of.   In-
struction No. 11 reads as follows:   ''One of the defenses in
this case is that the plaintiff, by written contract, settled and
released any claim he may have had against the defendant
in consideration of the receipt of $200.   The court instructs
you that if you find that after the accident plaintiff accepted
$200 and released the defendant from any further liability
on account of this injury, that release is valid and binding
upon the plaintiff and defeats the right to recovery in this
action, unless you further find that the defendant was guilty

of some fraud in obtaining such release, or unless you should further find that at the time of making such release the facts constituting plaintiff's injury, as they then existed, were unknown to the parties and were not therefore taken into consideration by them in determining upon the amount of damages to be paid to the plaintiff.'' This instruction does not state the law correctly, as it is held by a long line of decisions in this State that, before a party to a contract may rescind for either fraud or mistake, he must have restored any thing of value which he may have received in consideration for a release. Such contract cannot be rescinded in part and affirmed in part, but must be rescinded *in toto* or not at all. *Citizens St. R. Co.* v. *Horton* (1897), 18 Ind. App. 335, 48 N. E. 22; *Horner* v. *Lowe* (1902), 159 Ind. 406, 411, 412, 64 N. E. 218; *American Cent. Life Ins. Co.* v. *Rosenstein* (1910), 46 Ind. App. 537, 92 N. E. 380; *Modern Woodmen, etc.* v. *Vincent* (1907), 40 Ind. App. 711, 80 N. E. 427, 82 N. E. 475, 14 Ann. Cas. 89; *United States, etc., Ins. Co.* v. *Clark* (1907), 41 Ind. App. 345, 83 N. E. 760; *Supreme Council, etc.* v. *Apman* (1907), 39 Ind. App. 670, 80 N. E. 640; *Krag-Reynolds Co.* v. *Oder* (1899), 21 Ind. App. 333, 337, 52 N. E. 458; *Higham* v. *Harris* (1886), 108 Ind. 246, 253, 8 N. E. 255; *Worley* v. *Moore* (1884), 97 Ind. 15, 19; *Heaton* v. *Knowlton* (1876), 53 Ind. 357, 360; *Stedman* v. *Boone* (1875), 49 Ind. 469; *De Ford* v. *Urbain* (1874), 48 Ind. 219; *Joest* v. *Williams* (1873), 42 Ind. 565, 13 Am. Rep. 377; *Johnson* v. *Cookerly* (1870), 33 Ind. 151; *Stewart* v. *Ludwick* (1865), 29 Ind. 230; *Parks* v. *Evansville, etc., R. Co.* (1864), 23 Ind. 567; *Love* v. *Oldham* (1864), 22 Ind. 51; *Johnson* v. *Haughton* (1862), 19 Ind. 359; *McGuire* v. *Callahan* (1862), 19 Ind. 128; *Shepherd* v. *Fisher* (1861), 17 Ind. 229; *Fisher* v. *Wilson* (1862), 18 Ind. 133; *Gatling* v. *Newell* (1857), 9 Ind. 572; *Cain* v. *Guthrie* (1847), 8 Blackf. 409. Instructions Nos. 11½ and 15 do not state the law correctly, being subject to the same criticism as No. 11. Appellee cites the case of *Brown* v. *Ocean Accident, etc.,*

*Corp.* (1913), 153 Wis. 196, 140 N. W. 1112.    This case is an action for damages for fraudulent misrepresentations in obtaining the release.    The doctrine of the case is a clear and wholesome·statement of the law which has been universally followed by both this and the Supreme Court, and if such a case were presented by the record here, this court would adhere unhesitatingly to the principles therein set out, but the case made by the issues here is one for damages for injuries sustained because of the negligent misconduct of appellant as set out in the complaint.    Fraudulent

7.    misrepresentations which induced appellee to execute the release in question are set out in the reply, but the office of a reply is to avoid the facts set out in the answer, and must not depart from the theory of the complaint.    *Midland Steel Co.* v. *Citizens Nat. Bank* (1900), 26 Ind. App. 71, 59 N. E. 211, and authorities cited; *Louisville, etc., R. Co.* v. *Herr* (1893), 135 Ind. 591, 35 N. E. 556; *Kimberlin* v. *Carter* (1874), 49 Ind. 111; *McAroy* v. *Wright* (1865), 25 Ind. 22.    The principles laid down in *Brown* v. *Ocean Accident, etc., Corp., supra,* have no application to the case at bar.

We have carefully examined all of the authorities cited and relied on by appellee.    Where the principles announced have any application to the questions involved in this appeal, they are in harmony with the principles herein announced. Most of the cases cited go to the question of the sufficiency of the proof, or the facts, which are sufficient to constitute notice to the master of the vicious disposition of the animal in question, and are by no means in conflict with the doctrines herein announced.    Many difficult and perplexing questions are presented by the record in this case.    Numerous errors are urged, and some errors which can not be overlooked were committed by the trial court.    The motion for judgment on the facts found notwithstanding the general verdict, is overruled, but for the errors pointed out in the instructions, we

feel that the ends of justice will be best subserved by granting a new trial.

In view of the conclusion reached, other questions presented need not be discussed. Judgment reversed.

NOTE.—Reported in 102 N. E. 970. See, also, under (1) 2 Cyc. 367, 368; (2) 2 Cyc. 378; (3) 29 Cyc. 926; (4) 2 Cyc. 1015; (6) 34 Cyc. 1071; (7) 31 Cyc. 241, 255. As to liability for vicious animals, see 16 Am. St. 631; 97 Am. St. 287. As to liability for injuries inflicted by domestic animals other than dogs, see 2 L. R. A. (N. S.) 1188. As to liability of the keeper of an animal known to be dangerous, as affected by absence of negligence on his part, see 6 L. R. A. (N. S.) 1164. As to liability of owner for injury to person or property on highway by animal at large thereon in violation of statute, see 16 L. R. A. (N. S.) 647. As to liability for injury done by animals feræ naturæ, see 11 L. R. A. (N. S.) 748; 16 L. R. A. (N. S.) 445. As to master's duty to warn servant against vicious horse, see 3 L. R. A. (N. S.) 209. As to servant's assumption of risk, or contributory negligence in using unsafe horse, see 18 L. R. A. (N. S.) 695. As to necessity of the return or tender of consideration for release of claim for personal injuries, set aside on ground of fraud, see 35 L. R. A. (N. S.) 660. As to the duty and liability of a master to a servant with respect to an animal furnished by him to the servant, see 19 Ann. Cas. 863. As to avoidance of release of claim for personal injuries on account of misstatements by a physician as to nature of injuries, see 20 Ann. Cas. 750.