Wirth, Plaintiff in error, vs. The State, Defendant in error.

*March 12 — March 31, 1885.*

*Criminal law: Keeping animal with contagious disease: Evidence.*

The evidence in this case (stated in the opinion) is *held* not to have warranted a conviction of the offense of keeping an animal affected by a contagious disease in a place where other animals could have access to or become infected by it. Sec. 4605, R. S.

ERROR to the Municipal Court of *Milwaukee* County. The plaintiff in error was convicted of an offense under sec. 4605, R. S. The facts will sufficiently appear from the opinion.

For the plaintiff in error there was a brief by *Geo. B. Goodwin*, attorney, and *W. H. Austin*, of counsel, and oral argument by *Mr. Austin*.

*H. W. Chynoweth*, Assistant Attorney General, for the defendant in error.

Orton, J. The information charges the defendant with being the owner of a certain horse affected by an infectious disease, to wit influenza, and with having kept the said horse in a place where other animals, to wit horses, could have access to and become infected by said horse, he then well knowing the said horse to be so affected by the infectious disease aforesaid. The information describes the offense in the language of the statute (sec. 4605, R. S.), and sufficiently indicates the facts necessary to be proved in order to sustain it. It must be proved (1) that the defendant was the owner of a horse affected by an infectious disease, and known by him to be so affected; (2) he must have kept it in a place where other horses could have had access to and become infected by it. The important question in the case is whether there was any evidence to sustain the verdict of guilty.

The bill of exceptions has the certificate that it contains all the evidence in said cause. That evidence is very brief, and must be substantially copied as the ground of this opinion. It is as follows: The defendant kept a stable in the city of Milwaukee, in which he had use for a considerable number of horses, and in June, 1882, he had several horses on the farm of Stadler, some three miles from town, kept for pasturage. He had a horse in his stable that had been affected with a bad cold or influenza, and he employed a veterinary surgeon to doctor it, and it was apparently cured of said disease. The defendant told the said Stadler that he wished to send this horse also out to his farm for pasturage, and told him about the disease and the apparent cure, and Stadler told him to send the horse out to his farm and leave it with his boy. The defendant thereupon took the horse to the farm of Stadler, and hitched it in his yard, and told the boy then present not to turn the horse out with the other horses, or allow him to drink in the same pail. Stadler caused the horse to be put into his barn with other horses, but in a separate stall, and loose. In two or three days afterwards some of Stadler's horses appeared to be affected by the same disease. The defendant's horse soon recovered, and Stadler purchased him for $60 and gave his note therefor, and he testified that it was a good horse. When the note became due, the defendant sued Stadler on it; and when that suit was pending, he (Stadler) made the complaint in this case, and testified on the trial that he at that time said: "If they had not played a dirty trick on me by suing that note, I would never have done the dirty trick of making a complaint against *Wirth*."

The state called as a witness one Dr. Hughes, a veterinary surgeon, who testified in substance that he saw the horse in Stadler's yard; that he was swelled, and discharged at the nose considerably, and that he had acute *influenza*, and that it appeared to be a relapse, and that one other horse of

Stadler had symptoms of influenza. The defendant testified that a veterinary surgeon (Dr. Taylor) advised him to put the horse out on a farm to recruit, as he was weak; that he had employed said surgeon to cure the horse, and he took his advice. Dr. Taylor, who was the surgeon who doctored the horse, testified that he examined the horse at the barn of the defendant and on the farm of Stadler, and the only disease the horse had was a bad cold or influenza; that he had cured him, and advised the defendant to put him out on the farm, as he was weak. This veterinary surgeon was examined as an expert, and testified that influenza was an atmospheric disease, and that large districts of horses were sometimes attacked by it at the same time, and that such disease is not infectious or contagious, and that it takes a week for an infectious or contagious disease of horses, after exposure, to develop. Dr. Ormond, another veterinary surgeon, testified as a medical expert that influenza is an atmospheric disease, and affects the salivary glands and mucous membranes, and is not infectious or contagious; that it is only a bad cold, and no more catching than a bad cold; that all horses in the street are apt to be affected by it often, and that " scarcely any horse is clear of it once a year;" that he has seen many horses together, and some have it and others not.

The first question that presents itself is, If this horse had an infectious or contagious disease, did the defendant have knowledge of it? It may be that if he had knowledge that the horse was afflicted by " glanders or farcy," the diseases named in the statute, or any other disease clearly and commonly known as infectious or contagious, he might be presumed to know that it was so infectious or contagious. But when the disease is nothing but a bad cold or influenza, certainly not generally regarded as infectious or contagious, he cannot be presumed to have had such knowledge. There was not a particle of evidence that he knew that the disease

the horse had was infectious or contagious, but, on the other hand, the evidence is that he was informed that it would be perfectly safe to turn it out on a farm, and that if it had been affected with a bad cold or influenza it was then perfectly cured of that disease.

2. Did the defendant " have the horse kept, or cause him to be kept, in a place where other horses could have access to or become infected by it?" The evidence is that he left the horse hitched to the fence in Stadler's yard, away from other horses, in the care of Stadler, and at Stadler's request, and that afterwards he never had it kept in any other place, but left it with Stadler to do as he pleased about it, after being informed of the disease the horse had formerly been affected with, and after a caution by the defendant not to turn him out with other horses, or to allow him to drink out of the same pail. If this horse was ever kept in a place where other horses could have access to or be infected by it, it was not the act or fault of the defendant, but of Stadler. This is too clear for argument.

3. Was this horse affected by an infectious or contagious disease? Here, again, there was not a particle of evidence of this main fact, the very *gravamen* of the offense, if the other facts had been proved. The veterinary surgeon, Dr. Hughes, called by the state as a witness, did not testify, and was not asked to testify, that the bad cold or acute influenza which the horse had was infectious or contagious. The state offered no evidence to prove this vital fact necessary to constitute the offense. There is not a disease or ailment of horses of any kind whatever which, in the absence of this most necessary evidence, may not be the sure foundation of a prosecution and conviction of almost any owner of a horse. This case was tried upon the presumption, against a person charged with a very grave and mean offense, that every ailment of a horse is infectious or contagious. But in this case the burden of proof that the dis-

ease was not infectious or contagious, in violation of the usual rule in criminal cases, was cast upon the defendant, and he did prove by competent medical testimony that the disease was not infectious or contagious.

This is not a case of conflicting evidence on this question, in which the jury might be justified in finding either way upon it, but a case in which all the evidence is one way, without a doubt having been cast upon it. But, besides this want of evidence to inculpate the defendant introduced by the state, the conclusive evidence on behalf of the defendant to exculpate him on this vital point in the case, the common observation of men, is that such a disease is not infectious or contagious. If that is not sufficient, the authorities in dictionaries and medical works on this question, so far as I have examined, are uniform that it is not. The words "infection" and "contagion" are nearly synonymous, the only difference being, not in the infectious or contagious matter, but in the manner of its communication. Infection is communicated from the sick to the well by a morbid miasm or exhalation diffused in the air. Contagion is communicated by actual contact. The words "glanders and farcy," in our statute, are the words generally used in other statutes, in this country and in England, to indicate *certainly* contagious or infectious diseases, and other diseases are very seldom, if ever, declared by law to be so (Oliph. Horses, 90); and they must in any given case be determined to be so by sufficient evidence as a question of fact. "Glanders" is a disease of the mucous membrane of the nostrils, with a vitiated secretion. "Farcy" is a disease in the nature of *scabies* (itch) or mangy eruptions of the skin. These diseases are certainly contagious. Influenza is an epidemic catarrh, caused by the seasons, weather, and its vicissitudes. The causes exist in the air, and affect the throat and respiratory organs, and it is commonly called a "cold," or "common cold." Oliph. Horses, 82; Hanov.

Horses, 76–88, 66; Copland, Dictionary of Medicine; Imperial Dictionary, under the titles.

The disease this horse was proved to have had is not infectious or contagious by any authority I have consulted. It is an *epidemic*, and is governed by the conditions of the atmosphere and seasons of the year. There is spring influenza and summer influenza, etc. When and where it prevails it is likely to affect all horses under the same conditions in the same districts. The medical evidence in this case was that infectious or contagious diseases will not develop sooner than one week after exposure, and such are the authorities. The evidence that other horses, or rather another horse, of Stadler were or was afflicted by this same disease in a day or two afterwards, is proof that such disease was not communicated by the horse in question. It is sufficient that there was no proof whatever, either by expert evidence or by medical authority, on the trial, that the disease with which this horse was affected was infectious or contagious.

The fact that the defendant cautioned the boy in whose charge the horse was first left in the yard of Stadler not to allow it to run with other horses, or to drink from the same pail, is urged before this court as some evidence upon which the jury may have been justified in finding that the disease with which it was affected was infectious or contagious. This certainly was no admission of the fact that such disease was contagious by the defendant, and if it was even evidence of a well-grounded suspicion that it was so, on his part, the want of evidence of the fact upon the trial would not have been thereby supplied. But the presumption of innocence which always prevails in criminal cases, and the fair and humane interpretation which ought to be given to the statement or admission, if the language will possibly bear it, should lead any one to believe and the jury to have believed that he gave this advice from overcaution and ex-

traordinary prudence, not knowing but that some mistake might have been made by the veterinary surgeons as to the real nature of the disease.

This case upon the record is most extraordinary and unaccountable. A jury of twelve men found the defendant guilty of this hateful crime, and the learned judge before whom it was tried refused to set aside the verdict and to grant a new trial therein. It now devolves upon this court to pass upon the question whether the verdict was not contrary to the law and the evidence, upon an exception of the defendant to the order of the municipal court refusing to set aside the verdict and to grant a new trial. Notwithstanding the public clamor that there are too few convictions for crime and too many escapes from punishment through the meshes of the law, which does not, ought not, and shall not affect this court in respect to its duty in this and all other cases, we are compelled to hold in this case that there was no evidence whatever establishing the guilt of the defendant. The guilty, when proved so according to law, ought not to escape; but much less ought the innocent to be convicted of crime and suffer punishment unjustly. The law demands no such sacrifice either for atonement or example.

*By the Court.*— The judgment of the municipal court is reversed, and the cause remanded for a new trial.