### ADAMS EXPRESS COMPANY v. HEAGY.

[No. 9,796.   Filed March 27, 1919.]

1. PLEADING.—*Alternative Allegations.*—At common law a pleading
   is bad when it states material facts in the alternative, and thereby

makes it impossible to determine on which of several equally sub-
stantive averments the pleader relies for the maintenance of his
action. p. 658.

2. PLEADING.—*Complaint.—Construction as a Whole.—Sufficiency.*
—A complaint is to be construed as a whole, and, if it contains
facts sufficient to authorize any relief, it will be held good as
against demurrer. p. 659.

3. PLEADING.—*Complaint.—Sufficiency.—Alternative Allegations.*—
In an action by a livery stable keeper against an express company,
a complaint charging that defendant brought an infected horse
to plaintiff's stable, when it knew, or could have known by the
exercise of reasonable care, of the diseased condition of the
horse, is not demurrable on account of such alternative pleading.
p. 659.

4. ANIMALS.—*Placing Infected Horse in Livery Stable.—Action.*—
*Burden of Proof.*—In an action by a livery stable keeper against
an express company for placing a diseased horse in his stable,
the burden was on plaintiff to show that defendant knew, or
could have known of the diseased condition of the horse, and that
such disease was contagious. p. 661.

5. ANIMALS.—*Infected Horse.—Knowledge of Disease.—Evidence.*
—*Sufficiency.*—In a livery stable keeper's action against an ex-
press company for placing an infected horse in his stable, evidence
*held* insufficient to show that defendant had knowledge, either
actual or imputed, of the diseased condition of the horse. p. 661.

6. ANIMALS.—*Infected Horse.—Placing in Livery Stable.—Rea-
sonable Care.—Evidence.*—In an action by a livery stable keeper
against an express company for placing an infected horse in his
stable, evidence, when properly presented, that catarrhal fever,
with which the horse was afflicted, is not subject to quarantine in
Indiana, should be admitted as going to the question of reason-
able care. p. 661.

7. ANIMALS.—*Infected Horse.—Placing in Livery Stable.—Liability.*
Where an express company placed a horse infected with ca-
tarrhal fever in a livery stable, it was not liable to respond in
damages to the stable keeper, unless it had either actual or im-
puted notice that the horse was afflicted with such disease, and
that it was contagious and infectious at the time. p. 662.

8. ANIMALS.—*Contributory Negligence.—Receiving Infected Horse.*
—If a livery stable keeper, either personally or by agent, accepted
from an express company a diseased horse with knowledge of its
condition, and took no steps to prevent the communication of the
disease, he was negligent in receiving the horse and keeping it,
and could not recover, in an action against the express company,
for loss of business through infection of horses belonging to other
customers. p. 662.

9. EVIDENCE.—*Opinion.*—*Expert Witness.*—*Lack of Qualification.*—In an action by a livery stable keeper against an express company for placing a diseased horse in his stable, it was improper to permit witness who had never visited the Chicago stockyards, and was unacquainted with their condition, to testify as to the probability of a horse shipped from there being infected with a particular disease. pp. 663, 664.

10. EVIDENCE.—*Condition of Diseased Horse.*—*Testimony by Owner.*—In an action by a livery stable keeper against an express company for placing an infected horse in his barn, it was proper for the trial court, in its discretion, to permit a witness, whose horse was infected with the disease, to testify as to its condition. p. 663.

11. EVIDENCE.—*Opinion.*—*Physical Condition of Horse.*—*Expert Witness.*—*Qualification.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, it was proper for the trial court, in its discretion, to permit a witness, who was a liveryman with seven years' experience, to testify as to the physical condition of the horse involved, it not being always necessary that such a witness be a veterinarian with a technical education. p. 664.

12. EVIDENCE.—*Opinion.*—*Condition of Horse.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, the trial court properly permitted a witness who had been a farmer all of his life to testify as to the condition of his horse, one of those infected by the disease. p. 664.

13. EVIDENCE.—*Opinion.*—*Condition of Horses.*—*Expert Witness.*—*Qualification.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, it was proper to permit a witness, who had twenty or thirty years' experience in handling horses, to testify as an expert. p. 664.

14. WITNESSES.—*Impeachment.*—*Inconsistent Statements.*—In a livery stable keeper's action for damages, where plaintiff testified that at the time of closing his business he had about $1,000 in his pocket, it was error to exclude testimony by the owner of the stable that plaintiff owed him rent, and, on request for payment, had said that he had no money. p. 664.

15. ANIMALS.—*Infected Horse.*—*Placing in Livery Stable.*—*Instruction.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, an instruction undertaking to state the substance of the complaint and informing the jury that, if plaintiff proved all the material averments thereof, the verdict should be for him, but failing to state that the damages incurred must have been without any fault or negligence on plaintiff's part, was misleading and reversible error. p. 664

16. ANIMALS.—*Infected Horse.—Placing in Livery Stable.—Instruction.—Imputed Knowledge.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, an instruction that if defendant, by the exercise of reasonable care and precaution, could have known that the horse was diseased, knowledge of the fact must be imputed to it, was correct. p. 665.

17. ANIMALS.—*Infected Horse.—Placing in Livery Stable.—Instruction.—Inapplicability to Evidence.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, an instruction that, if defendant placed the horse in the barn during plaintiff's absence, etc., was erroneous as being misleading, where the uncontradicted evidence showed that at the time the barn was in charge of plaintiff's agent, and that he accepted the horse and placed it in a stall. p. 665.

18. ANIMALS.—*Infected Horse.—Placing in Stable.—Instructions.—Contributory Negligence.*—In an action by a livery stable keeper against an express company for placing an infected horse in his stable, an instruction based upon the theory that defendant put the horse in plaintiff's stable in his absence, when he was present by his agent, and omitting the element of contributory negligence, was erroneous. p. 665.

19. ANIMALS.—*Infected Horse.—Placing in Stable.—Instructions.—Omissions.*—In an action by a livery stable keeper against an express company for placing an infected horse in his barn, as a result of which the disease was communicated to other horses, an instruction omitting the element of knowledge on the part of defendant whether the disease of the horse involved was contagious and infectious, was erroneous. p. 666.

From Tipton Circuit Court; *Cleon W. Mount*, Judge.

Action by Wilson M. Heagy against the Adams Express Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Gifford & Gifford* and *Kittenger & Diven*, for appellant.

*Alfred Ellison*, for appellee.

NICHOLS, J.—This was an action begun in the superior court of Madison county by the appellee against

the appellant for damages which appellee claims he suffered by reason of the fact that the appellant, while boarding its horses at the appellee's livery stable, brought to the stable a new horse, which was infected with catarrhal fever, thereby infecting appellee's barn and horses, and compelling him to close his business.

The complaint is in one paragraph, to which appellant demurred with memorandum, which demurrer was overruled, to which ruling the appellant excepted. The venue of the cause was changed to the circuit court of Tipton county, in which last-named court there was a trial by jury with a verdict for the appellee upon which judgment was rendered. The appellant filed its motion for a new trial, which was overruled, to which ruling appellant excepted and now brings the case on appeal to this court.

The errors relied upon for reversal are: (1) The superior court of Madison county erred in overruling appellant's demurrer to appellee's complaint. (2) The Tipton Circuit Court erred in overruling appellant's motion for a new trial.

The complaint avers in substance that on September 1, 1915, appellee was engaged in general livery business in the city of Anderson; that at said time he had nineteen "boarders," or horses, which he was feeding by the month, at a profitable charge therefor, and a great number of transient horses and horses for livery hire; that the appellant was engaged in the general express business, and for the purpose of delivering its packages in the said city of Anderson it kept four horses which it hired the appellee to board and care for in his livery barn; that on said day, and when the appellee was absent from his said livery

barn, the appellant brought from the stockyards of Chicago a certain horse belonging to it, which was placed in the appellee's livery barn, and that such horse was then affected and severely diseased with catarrhal fever; that the appellant knew, or by the exercise of reasonable care would have known, of the diseased condition of said horse before placing the same in appellee's barn; that the appellant placed such horse in said barn among appellee's own horses and the permanent and transient boarders therein; that said disease of catarrhal fever was a highly infectious and contagious disease, and that when placed in contact with other horses it would quickly and rapidly communicate to them said disease, and that they would thereby become infected and diseased, all of which was well known to the appellant, or could by the exercise of reasonable care have been known; that, as a direct result of said act of said appellant in placing said diseased and infected horse in appellee's barn, appellee's horses and his boarders, both permanent and transient, became at once infected with said catarrhal fever, and that as soon as his transient customers learned of said condition they quit patronizing him, to his great loss and damage; that he was compelled, at great expense to himself, and with great labor, to doctor each and all of said horses through their sickness, and that, as soon as they were able to leave said barn, each and all of them were removed therefrom by the owners, to the great loss and damage of the appellee; that appellee thereby lost his livery trade, his own horses became infected and sick and unable to be driven, and he was entirely deprived of the profits of said business, to his great loss and damage; that each and all of his

horses became diseased thereby and have been rendered wholly unfit for use, and their value entirely destroyed, and that, as a result of said wrongful act of the appellant, the appellee was denied and deprived of the reasonable profit of the business worth $1,800 per year, clear profit, and that he was damaged in the sum of $5,000 without his fault or negligence, for which sum he demanded judgment.

The demurrer to this complaint was for want of facts to constitute a cause of action, with memorandum to the effect that there was no allegation that the appellant knew of the condition of the horse which it brought to the appellee's stable, but that such allegation was pleaded in the disjunctive; that he knew, or could have known by the exercise of reasonable care, and that the same was not pleaded as a distinct fact.

The appellant raises but one question as to the sufficiency of the complaint, and that is with reference to the averment that the appellant knew, or by

1. the exercise of reasonable care would have known, of the diseased condition of the horse before placing it in the appellee's barn. Appellant says that this averment, being in the alternative and disjunctive, makes the complaint bad. We are not unmindful of the general rule of common law that the pleading is bad when it states material facts in the alternative, and thereby makes it impossible to determine upon which of several equally substantive averments the pleader relies for the maintenance of his action. But it has been held by the court in the case of *Indianapolis, etc., Traction Co.* v. *Henderson* (1906), 39 Ind. App. 324, 79 N. E. 539, that a complaint containing an allegation that the motorman

of one of appellant's cars, "could and did see plaintiff's said horse upon the track, or by the exercise of due care and diligence could have seen said animal" was not vitiated thereby, the alternative averments each referring to the same ultimate fact. The

2. complaint is to be construed as a whole, and, if it contains facts sufficient to authorize any relief, it will be held good against demurrer.

3. On page 328 of the above mentioned case, a large number of authorities are cited. See, also, *Indianapolis Abattoir Co.* v. *Bailey* (1913), 54 Ind. App.: 370, 102 N. E. 970; *Alfrey* v. *Shouse* (1915), 163 Ky. 333, 173 S. W. 792; *Cook* v. *Waring* (1863), 2 H. & C. Exchequer 332; *Jeffrey* v. *Bigelow* (1835), 13 Wend. (N. Y.) 518, 28 Am. Dec. 476; *Patee* v. Adams (1887), 37 Kan. 133, 14 Pac. 505. It was not error to overrule the demurrer to the complaint.

It is earnestly insisted by the appellant that the evidence in this case wholly fails to sustain the verdict. It appears by the uncontradicted evidence that the horse involved was purchased by the appellant's superintendent of stables on August 10, 1915, of Frank Hanley, who occupied barn No. 9 in the Chicago stockyards, in which barn no horses except his were permitted; that said Hanley had purchased the horse on August 7, 1915, at which time it was sound; that he shipped it to Chicago, and put it in the said barn on the morning of August 8; that on August 7 and 8 this barn had been closed and thoroughly fumigated and disinfected, which treatment rendered it entirely safe; that there were only fifty horses in the barn while the one involved was there, and that none of them were sick or became sick during the time that it was there; that the horse was taken from

this barn on the 10th to the appellant's barn in another part of the city, where it remained until August 24; that while in appellant's barn it was examined twice daily, its temperature taken, and its condition ascertained to be good all the time. There was no sickness in the appellant's barn during this time, and none developed thereafter. The sanitary condition of the barn and the methods of handling the horses were shown and testified to by experts as being fine. On the evening of August 24, 1915, the horse was taken from appellant's barn and examined and found to be in fine condition, and then loaded into one of appellant's express cars in which there were no other horses, and shipped to Anderson, where it arrived at 8 o'clock on the morning of August 25. He was taken to the blacksmith shop and shod by two blacksmiths, and from there was taken to the appellee's barn, and was turned over to the man in charge. The parties unloading the horse and the blacksmith each and all examined it and discovered nothing wrong. There was evidence to the effect that there was some swelling on the horse's legs at the time or shortly after it was brought to the appellee's barn, while the blacksmiths who had shod the horse said there was none. It was uncontradicted, however, that riding on the train very often causes some swelling in the legs. It further appears by the uncontradicted evidence that the horse was hitched up on the following Saturday by one of the appellant's drivers, and driven to an express wagon for half a day, and that it was free to go and nothing wrong was noticed with it. Appellant claims that upon that night it was noticed that the horse did not eat and appeared to be drooping, and that a veterinarian was called, who diagnosed

the case as catarrhal fever. The appellee fixes an earlier time at which the veterinarian was called. Rebutting this overwhelming testimony as to the healthy condition of the horse, witness Edward Payne, who was in the employ of the appellee and who, at the time that the horse was delivered at the appellee's barn, was in charge of the same, the appellee being absent and not returning until evening, testified, in answer to questions propounded to him, that the horse was thin and did not look very good generally; that he handled horses for the past fifteen years and had seen a few sick horses and well horses, and that he could tell when a horse was sick, and that the horse involved in this suit was, at the time that it was delivered to the stable, sick. The burden was upon the appellee to show that the appellant then and there well knew, or by the exercise of reasonable care would have known, of the diseased condition of the horse, and that such disease was contagious, and we cannot hold, in the face of the overwhelming evidence as to the healthy condition of the horse, that the scintilla of evidence, if such it may be termed, as to the observations of the appellee's servant that the horse was sick, showed that the appellant had knowledge, either actual or imputed, of its diseased condition. But for the testimony of this one witness, who was the servant of the appellee, there is no evidence in the record that the horse was not apparently healthy at the time it was placed in appellee's livery barn, although there is some evidence of its being sick a few hours later. See *Cincinnati, etc., R. Co.* v. *Zachary's Admr.* (1908), (Ky.) 106 N. W. 842. Nor is there any evidence in the record that the appellant knew that catarrhal fever, which is, as the evidence

shows, the same as influenza, is a contagious or infectious disease. In the case of *Wirth* v. *State* (1885), 63 Wis. 51, 22 N. W. 860, it is stated that the common observation of men is that such a disease (influenza) is not infectious or contagious, and that the authorities in dictionaries and medical works on this question, so far as examined, are uniform that it is not; that influenza is an epidemic catarrh caused by the seasons, weather and vicissitudes, the causes existing in the air and affecting the throat and respiratory organs. Indiana is not very far from Wisconsin, and, if this disease is not contagious or infectious there, it is probable that appellant had reason to believe that it might not be contagious or infectious here. This may account for appellant offering to prove that the disease is not subject to quarantine in Indiana, evidence which, when properly presented, should be admitted as going to the question of reasonable care. Until it is shown that the appellant had either actual or imputed notice that the horse was afflicted with the disease of catarrhal fever or influenza, and that it was contagious and infectious at the time that the horse was delivered to the appellee's livery barn, it cannot be held to respond in damages. If it be conceded that witness Payne discovered that the horse was sick at the time that it was delivered to appellee's livery barn, and that the appellant must therefore have discovered such condition, or by the exercise of reasonable care could have discovered it, still the evidence is insufficient to support the verdict, for the witness Payne was at the time in charge of the business of the appellee and his knowledge was the knowledge of the appellee. It was as much the duty of

the appellee as it was of the appellant, when the disease was discovered, to use all care and diligence within his power to prevent the communication of the disease. This he did not do, but, instead, accepted the horse which he knew to be sick and placed it in the stall in the livery barn, and this was after he was warned of the danger by his own observation of the condition of the horse. Further, it appears that the appellee himself returned to his livery barn at about 5 o'clock in the evening, and that he then discovered that the horse was sick. He took no steps, however, to have it removed or to disinfect the stall in which it had been standing, and the horse remained in the barn until it had recovered from this disease. If the appellant was guilty of negligence in taking its horse, when it was afflicted with a contagious and infectious disease, to appellee's livery barn, then the appellee was guilty of contributory negligence in receiving such horse and keeping it in the livery barn, knowing at the time, as he says he did, of its diseased condition as aforesaid.

9. It was prejudicial error for witness O. M. Catey to be permitted to answer as to the probability of a horse shipped out of the stockyards of Chicago being infected with catarrhal fever, it appearing that the witness had never visited these stockyards, and was unacquainted with their condition.

10. It was not error for the court in its discretion to permit witness John Lavelle to testify as to the condition of his horse, which was one of the horses that were infected with the disease.

It was not error for the court in its discretion to permit witness Frank Pence to testify as to the phys-

ical condition of the horse involved. The record shows that this witness was a liveryman with seven years' experience, and it is not always necessary that a witness of this character should be a veterinarian with a technical education.

The court did not err in permitting witness Walter Kemp to testify as to the condition of his horse, which was one of the horses infected by the disease, and the witness having been a farmer all his life.

While it was not error to permit witness Float Jolly to testify as an expert, he having had twenty or thirty years' experience in handling horses, it was error to permit said witness to give an opinion as to the probability of horses being infected with catarrhal fever that had come from the stockyards of Chicago, it appearing by the evidence that this witness did not know of the sanitary condition of the Chicago stockyards at the time that it was claimed that the horse involved was there.

It was error to refuse the testimony of Henry Conrad to the effect that appellee owed him rent for the barn, and upon request for payment stated that he had no money, appellee having testified that at the time of closing his business he had about $1,000 in money in his pocket.

Instruction No. 1 undertakes to state the substance of the complaint to the effect that, because of appellant's negligence therein stated, the appellee was damaged in the sum of $5,000, but fails to state the allegation contained in the complaint that such damage was suffered without any fault or negligence on the appellee's part whatever. With

this omission the instruction closed by saying: "I instruct that if the plaintiff has proven all the material averments of his complaint by a preponderance of all the evidence, then your verdict should be for the plaintiff, Wilson Heagy." The omission from this instruction of the statement that the damages incurred were without fault and negligence on the plaintiff's part was misleading and reversible error.

Instruction No. 2 is a correct instruction. It charges the jury that, if by the exercise of reasonable care and precaution the appellant could have known that the horse involved was infected, then knowledge will be imputed to the appellant. This principle is sustained by the authorities cited on the ruling upon the demurrer to the complaint, *supra*. Upon this theory, instruction No. 3 is not erroneous, and no other errors in this instruction are complained of.

Instruction No. 4 tells the jury that, if appellant placed the horse in appellee's barn during his absence, etc., but the uncontradicted evidence shows that during the absence of the appellee his livery barn was in charge of, and in the management of, the appellee's agent, and that the horse was turned over to and was accepted by such agent and by him placed in the stall. The instruction is misleading and is erroneous.

Instruction No. 6 is based upon the misleading theory that appellant put the horse in appellee's stable in his absence, when he was present by his agent. It also omits the element of contributory negligence. For these reasons it is erroneous.

Instruction No. 7 omits the element of knowledge on the part of the appellant as to whether the disease that afflicted the horse was contagious and infectious, and is therefore erroneous.

The cause is reversed, with instructions to grant a new trial.